UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAUL HALCZENKO Dr., <br> JENNIFER JIMENEZ, <br> ERIN NICOLE GILLESPIE, <br> VALERIE FRALIC, <br> KRISTIN EVANS on behalf of Themselves <br> and all those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ASCENSION HEALTH, INC., <br> ST. VINCENT HOSPITAL AND HEALTH <br> CARE CENTER, INC. <br>    d/b/a ASCENSION ST. VINCENT <br> HOSPITAL, <br><br> Defendants. | No. 1:21-cv-02816-JPH-MG |

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

Ascension[1] adopted a policy requiring its employees to be vaccinated against COVID-19. Plaintiffs each requested an exemption from the vaccination requirement based on their religious beliefs. Ascension denied those requests. Plaintiffs sought a temporary restraining order prohibiting Ascension from putting them on unpaid leave and terminating their employment. The Court denied that motion on November 12, 2021, and Ascension put Plaintiffs on unpaid leave the same day.

Ascension had previously informed Plaintiffs that their employment would be permanently terminated on January 4, 2022, if they were still

---

[1] The Court uses "Ascension" only as an identifier of Defendants, not as a statement on the legal employer-employee relationships among any parties.

unvaccinated at that time. But in mid-December, Ascension reversed course and informed all but one Plaintiff—Dr. Paul Halczenko—that they had been recalled and could return to their respective positions. Those Plaintiffs have thus withdrawn their requests for preliminary injunctive relief, dkt. 49 at 9, but Dr. Halczenko remains suspended and has not been informed that he will be reinstated. Accordingly, the Court addresses only Dr. Halczenko's request that Ascension immediately reinstate him to his position.[2] For the reasons explained below, that motion is **DENIED**.

## I.
## Facts & Background

By agreement of the parties, dkt. 25 at 2, no hearing was held on Plaintiffs' motion for a preliminary injunction. Consequently, the Court bases its factual findings on the parties' written submissions.

Until his suspension, Dr. Paul Halczenko worked as a pediatric critical care physician at Ascension St. Vincent's Peyton Manning Children's Hospital. Dkt. 9-1 at ¶ 4. His specialty requires that he work in a hospital setting, specifically in the pediatric intensive care unit (PICU)—of which there are only three in Indiana including two in the Indianapolis area. Dkt. 38-5 at ¶ 8, 16, 22. As a PICU doctor, Dr. Halczenko must be skilled "beyond basic technical skills and [he] must be able to perform complex tasks on critically ill infants

---

[2] Plaintiffs sought injunctive relief on behalf of several putative sub-classes of Ascension employees affected by the vaccine mandate and exemption policy, but have not moved for class certification. Because the only claims before the Court at this time are specific to Dr. Halczenko, the Court declines to consider relief on behalf of any class or sub-class.

2

and very young children." *Id.* at ¶ 12.  Dr. Halczenko asserts that the careful maintenance of these skills through practice and regular repetition "can literally make the difference between life and death" for his patients.  *Id.*

After Ascension announced that employees must be vaccinated against COVID-19 unless granted a religious or medical exemption, Dr. Halczenko applied for an exemption based on his sincerely held religious beliefs.  Dkt. 9-1 at ¶ 41–44.  Ascension denied his request, *id.* at ¶¶ 45, 50, informing him that "providing an exemption to a Pediatric Intensivist working with acutely ill pediatric patients poses more than a de minim[i]s burden to the hospital because the vaccine provides an additional level of protection in mitigating the risk associated with COVID."  *Id.* at ¶ 57.

Dr. Halczenko and the other named Plaintiffs were placed on leave effective November 12, 2021.  Dkt. 38-5 at ¶ 16.  Plaintiffs filed claims with the Equal Employment Opportunity Commission alleging religious discrimination, dkt. 4 at 10, and sought a temporary restraining order against Ascension.  Dkt. 3.  The motion for a temporary restraining order was denied on November 12, 2021.  Dkt. 19.

In that order, the Court noted that "the only 'immediate' harm that Plaintiffs have established with the requisite degree of certainty at this time is financial harm resulting from unpaid leave."  Dkt. 19 at 8.  Under Supreme Court and Seventh Circuit precedent, this was not enough to warrant the extraordinary remedy of a temporary restraining order.  *See Sampson v. Murray*, 415 U.S. 61, 89–92 (1974); *E. St. Louis Laborers' Local 100 v. Bellon*

*Wrecking & Salvage Co.*, 414 F.3d 700, 703–707 (7th Cir. 2005); *Bedrossian v. Nw. Mem'l Hosp.*, 409 F.3d 840, 845 (7th Cir. 2005). However, the Court recognized that *Sampson* left open the door in cases when "the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, [] so far depart from the normal situation that irreparable injury might be found." Dkt. 19 at 7–8 (citing *Sampson*, 415 U.S. at 92 n.68). On the limited record that was available at that stage, it remained unclear whether this was such a case.

The Court set a schedule for limited, expedited discovery; expedited briefing; and an evidentiary hearing. Dkt. 19 at 9. The parties subsequently "agreed that the Court could vacate the hearing . . . and [that they would] submit briefs and evidence on the merits." Dkt. 25 at 2. On December 27, 2021, Plaintiffs informed the Court that, of the five named Plaintiffs, only Dr. Halczenko had not been given the opportunity to return to his position. Dkt. 48. Dr. Halczenko thus faces termination on January 4, 2022.

## II.
## Applicable Law

### A. Preliminary injunction standard

Injunctive relief is "an exercise of very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (citations and quotations omitted). To obtain such extraordinary relief, the party seeking the preliminary injunction carries the burden of persuasion by a clear showing. *See Mazurek v. Armstrong*, 520

U.S. 968, 972 (1997); *Dos Santos v. Columbus–Cuneo–Cabrini Med. Ctr.*, 684 F.2d 1346, 1349 (7th Cir. 1982).

Determining whether a preliminary injunction is appropriate under Federal Rule of Civil Procedure 65 involves a two-step inquiry, with a threshold phase and a balancing phase. *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017). At the threshold phase, the moving party must show that: (1) without the requested relief, it will suffer irreparable harm during the pendency of its action; (2) traditional legal remedies would be inadequate; and (3) it has "a reasonable likelihood of success on the merits." *Id.* "If the moving party cannot establish either of these prerequisites, a court's inquiry is over and the injunction must be denied." *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992) (considering, as many courts do, elements 1 and 2 together).

If, however, the movant satisfies these requirements, the Court proceeds to the balancing phase, applying a "sliding scale" approach "to determine whether the balance of harm favors the moving party or whether the harm to other parties or the public sufficiently outweighs the movant's interests." *Whitaker*, 858 F.3d at 1044; *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020).

### B. Irreparable harm and sufficiency of remedies

"Harm is irreparable if legal remedies are inadequate to cure it. [] Inadequate 'does not mean wholly ineffectual; rather, the remedy must be seriously deficient as compared to the harm suffered.'" *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545 (7th Cir. 2021) (citations omitted). The remedial

5

scheme of Title VII, which is designed to make the plaintiff whole, includes a broad range of remedies available to a prevailing plaintiff. *Williams v. Pharmacia Inc.*, 137 F.3d 944, 952 (7th Cir. 1998) (citations omitted). The range of remedies includes backpay to compensate for lost income; reinstatement or front pay to mitigate future harm; compensatory damages; and punitive damages to punish, should the jury find that the employer engaged in a discriminatory practice with malice or deliberate indifference. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C. § 2000e-5(g)(1); 42 U.S.C. § 1981a(b)(1); *see generally Morris v. BNSF Railway Co.*, 969 F.3d 753, 767-68 (7th Cir. 2020) (discussing range of Title VII remedies); *Sambrano v. United Airlines, Inc.*, 2021 WL 5176691 at *5–6 (N.D.Tex. Nov. 8, 2021) (discussing a court's "broad discretion" to craft relief under Title VII).

Ordinarily, "a permanent loss of employment, standing alone, does not equate to irreparable harm." *E. St. Louis*, 414 F.3d at 704; *see also Sampson*, 415 U.S. at 92; *Bedrossian*, 409 F.3d at 845; *Dos Santos*, 684 F.2d at 1349. The possibility of reinstatement or back-pay at the end of litigation is usually enough to show that preliminary injunctive relief is unnecessary. *See e.g., Sampson*, 415 U.S. at 90; *Shegog v. Board of Educ. of City of Chicago*, 194 F.3d 836, 839 (7th Cir. 1999).

When a plaintiff prevails on an employment discrimination claim under Title VII, backpay is presumed to be appropriate and reinstatement to the plaintiff's former position is the "preferred remedy." *Morris*, 969 F.3d at 767-68. If reinstatement is impractical, then front pay may be awarded "to put [the

6

plaintiff] in the identical financial position that he would have occupied had he been reinstated." *Id.* at 768 (citation omitted). Separately, compensatory damages may be awarded for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3).

Nonpecuniary loss may include injury to character, reputation, and professional standing. *Williams*, 137 F.3d at 952. Additionally, "[l]ost future earning capacity is a nonpecuniary injury for which plaintiffs may be compensated under Title VII." *Id.* at 953 (explaining that front pay award and compensatory damages for future lost earnings are distinct and compensate the plaintiff for different injuries).

Regardless of the exact damages or relief sought, the harm complained of must be concrete; "speculative injuries do not justify" the extraordinary remedy of injunctive relief. *E. St. Louis*, 414 F.3d at 704.

## III.
## Analysis

Dr. Halczenko argues that "he will suffer irreparable harm to his skills as a highly specialized Pediatric Critical Care physician and his reputation as a physician, which will irreparably harm his ability to pursue his pediatric critical care career." Dkt. 49 at 9. In support of this argument, he has designated evidence showing that his job skills are highly specialized and that those skills will likely deteriorate during the pendency of this litigation if he does not find another job where he can regularly use his skills. Dkt. 38-5 at ¶

8–16. Therefore, he seeks reinstatement to his position in the PICU pending the outcome of litigation. Dkt. 49 at 26.

The Seventh Circuit has cautioned district courts that "[i]nterlocutory reinstatement in employment cases should be rare, if that remedy is ever appropriate." *Shegog*, 194 F.3d at 839. Plaintiffs allege that Ascension violated Title VII of the Civil Rights Act by systematically and callously failing to accommodate their religious beliefs and denying their requests for exemption without giving individualized consideration of, or individualized responses to, each request. Dkt. 4 at 10. While these allegations of hostility toward or disregard of religion are extremely serious, "[r]einstatement pending a trial on the merits, even in cases of race or sex discrimination, is an extraordinary remedy permissible only upon a substantial showing of irreparable injury." *E.E.O.C. v. City of Janesville*, 630 F.2d 1254, 1259 (7th Cir. 1980).

Here, to reinstate Dr. Halczenko, the Court would have to override Ascension's decision denying a vaccine exemption to a physician whose job involves working closely with acutely ill pediatric patients.[3] Dkt. 9-1 at ¶ 57; dkt. 49 at 26. Against this backdrop, the Court evaluates whether Dr. Halczenko has made a "substantial showing" of irreparable injury.

---

[3] As Dr. Halczenko notes, dkt. 49 at 9, 13, Ascension has presented very little, if any, evidence in support of the stated reason for denying his exemption. But whether Ascension's handling of religious exemption requests was motivated by animus to, or disregard of, religion does not need to be resolved at this preliminary-injunction stage.

### A. Deterioration of professional skill

Dr. Halczenko argues that he is a "highly trained" physician and "[i]f he is out of work for more than five months, his skills will have deteriorated to the point that he will be unable to pursue his career as a pediatric critical care physician." *Id.* at 10. Ascension responds that "courts [] frequently reject" claims for injunctive relief that are based on an alleged deterioration of skills. Dkt. 45 at 10. Ascension also points out that, as a highly skilled physician, Dr. Halczenko has a high likelihood of obtaining other employment regardless of his termination at Ascension. *Id.* at 9.

Speculative injuries will not support a finding of irreparable harm, *E. St. Louis*, 414 F.3d at 704, so the burden is on plaintiffs to prove that the injury they face is likely. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 21 (2008). While Dr. Halczenko has submitted evidence that his specialized skills will deteriorate during the pendency of this case, the Court is not convinced that without immediate injunctive relief he "will be unable to successfully continue [his] career as a Pediatric Critical Care physician." Dkt. 38-5, ¶ 26. Certainly it could take considerable effort for Dr. Halczenko to, at some point in the future, restore his skills to where they were in November 2021. But the claim that his career as a Pediatric Critical Care physician will be over with no chance of holding such a position again strikes the Court as speculative. The harm that Dr. Halczenko has sufficiently established—atrophy in his medical skills during the pendency of this case—may constitute a high hurdle in his career's future, but not irreparable injury.

Indeed, while the Seventh Circuit has suggested that "deterioration" or "atrophy" of professional skill may support a finding of irreparable injury, *see, e.g., Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1460 (7th Cir. 1995), it has repeatedly declined to find that those concerns supported injunctive relief. *See id.* (finding no irreparable injury, even though plaintiff alleged "deterioration in his knowledge and skills," because he had not sought admittance to comparable programs); *Dos Santos,* 684 F.2d at 1349 (finding no irreparable injury where anesthesiologist had "neither alleged or proven an atrophy in her skills"); *Janesville*, 630 F.2d at 1259 (finding no irreparable injury "in the absence of a showing that" retired firefighter would "suffer 'deterioration of his skill'"). And that Court has "consistently held that physicians are awarded no special treatment under *Sampson* even when [] they assert that termination will cause a 'deterioration in skills.'" *Bedrossian*, 409 F.3d at 846.

Here, while Dr. Halczenko has shown that his specialized skills will likely deteriorate during the pendency of this case if he does not utilize those skills, dkt. 38-5 at ¶ 8–16, he has not shown that deterioration of those skills will result in irreparable harm. First, while Dr. Halczenko has provided evidence that he has attempted to find *locum tenens* (temporary) positions in other geographic areas, he has not pursued full-time employment as a pediatric critical care physician outside of Indiana due to unwillingness to relocate. Dkt. 38-5 at ¶¶ 57–62. Moreover, Dr. Halczenko has not submitted evidence that he applied for a position but was not selected because Ascension had suspended him. Instead, the impediment to securing *locum tenens* employment is the fact

10

that Dr. Halczenko is not vaccinated. Dkt. 38-5 at 60. Dr. Halczenko "has not presented adequate facts to make [difficulty finding another job] more than a 'speculative' harm." *Bedrossian*, 409 F.3d at 846 n.3. But even if he had, "inability to find another job . . . is not irreparable harm." *Id.* at 846. *See also Roth*, 57 F.3d at 1460 ("It is not 'irreparable injury' simply because he is unable to hand-pick the residency program he desires and refuses to make any reasonable effort to acquire a residency program.").

Second, Dr. Halczenko has not shown that Title VII remedies are insufficient. As discussed above, the Court may order reinstatement as a remedy if Dr. Halczenko prevails on his Title VII claim. *Morris*, 969 F.3d at 767-68. To make that reinstatement effective, Title VII vests the Court with broad power to fashion an equitable remedy that includes whatever steps—perhaps including additional training and temporary joint work with other highly skilled physicians—would allow Dr. Halczenko to fully restore his skills. *Patzer v. Bd. of Regents of Uni. Of Wis. System*, 763 F.2d 851, 854 n.2 (7th Cir. 1985) ("Title VII authorizes any equitable remedies the court deems appropriate."); *see also Bruso v. United Airlines, Inc.*, 239 F.3d 848, 863 (7th Cir. 2001) ("A district court is given broad discretion to fashion an equitable remedy that makes whole a plaintiff who has been discriminated against by his employer."). Combined with compensatory damages, including for decreased future earnings, that remedy can make Dr. Halczenko whole.

In short, Dr. Halczenko may be able to find employment elsewhere, and even if he cannot, Title VII still allows a sufficient remedy. *See Dos Santos*, 684

F.2d at 1349 ("Inability to obtain other employment is not considered irreparable harm because a terminated employee has an adequate remedy at law by obtaining a judgment in his favor."); *E. St. Louis*, 414 F.3d at 704 ("a permanent loss of employment, standing alone, does not equate to irreparable harm.").

### B.  Damage to reputation

Dr. Halczenko also argues that his impending termination will have far reaching and irreparable consequences on his career because he will have to report to potential future employers that he was terminated "for cause" and that he is not vaccinated.  Dkt. 43 at 22–29; dkt. 49 at 11.  Reputational injury stemming from a wrongful termination is generally not considered irreparable injury.  *See Sampson*, 415 U.S. at 91-92 ("assuming [plaintiff] had supported her claim that her reputation would be damaged," the claim did not establish irreparable injury); *Hetreed v. Allstate Ins. Co.*, 135 F.3d 1155, 1158 (7th Cir. 1998) ("Loss of face and reputation likewise may be palliated by a favorable decision at the end of the case as effectively as by interlocutory relief . . . .").

And here, the claimed reputational injury—and corresponding impediment to finding a comparable job—would arise from the undisputed, truthful fact that Dr. Halczenko's employment was terminated because he did not get vaccinated against COVID-19.  This claimed reputational injury "falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction." *Sampson*, 415 U.S. at 91-92; *Dos Santos*, 684 F.2d at 1349 ("[T]he Supreme Court expressly rejected the proposition that

'either loss of earnings or damage to reputation might afford a basis for a finding of irreparable injury and provide a basis for temporary injunctive relief.'").

### C. Adequacy of legal remedies

Dr. Halczenko has shown that the loss of his job at Ascension will cause him hardship and harm, and the Court "needn't assume falsely that those who are laid off may simply resume their careers as if they had not been interrupted." *Kinney for & on Behalf of N.L.R.B. v. Int'l Union of Operating Engineers, Local 150, AFL-CIO*, 994 F.2d 1271, 1279 (7th Cir. 1993). Title VII's broad remedial scope, however, allows a court or jury to craft remedies specific to the various types of harm that Dr. Halczenko may experience. Those remedies may include reinstatement to Ascension with a training plan that would enable him to eventually resume full responsibilities as a Pediatric Critical Care physician. *Patzer*, 763 F.2d at 854 n.2.

This wide range of equitable and legal remedies that would be available to Dr. Halczenko if he prevails cannot be ignored when considering whether his allegations establish a need for injunctive relief. Rather, the possibility that adequate compensatory or other corrective relief will be available in the ordinary course of litigation, "weighs heavily against a claim of irreparable harm." *Sampson*, 415 U.S. at 90 (quotation omitted); *Abbott Laboratories*, 971 F.2d at 12 (treating irreparable harm and sufficiency of available remedies as one factor).

*   *   *

Under the totality of the circumstances, Dr. Halczenko has failed to make a "substantial showing" of irreparable injury and insufficiency of remedies that would justify the extraordinary relief he seeks pending the outcome of this litigation—that is, reversing Ascension's decision to deny his exemption request and reinstating him to his position in the Pediatric Intensive Care Unit. Absent a showing of irreparable injury and inadequacy of legal remedies, the injunction must be denied, *Abbott*, 971 F.2d at 12, so the Court does not reach the questions of likelihood of success on the merits or the balancing of competing interests.

## IV.
## Conclusion

Plaintiffs' motion for preliminary injunction is **denied.** Dkt. [3]. Magistrate Judge Garcia is asked to conduct a status conference to enter an expedited case management plan.

**SO ORDERED.**

Date: 12/30/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

William Bock, III
KROGER GARDIS & REGAS
wbock@kgrlaw.com

Adam R. Doerr
KROGER GARDIS & REGAS LLP
adoerr@kgrlaw.com

Brian L. McDermott
JACKSON LEWIS PC (Indianapolis)
brian.mcdermott@jacksonlewis.com

Patricia Anderson Pryor
JACKSON LEWIS, LLP
pryorp@jacksonlewis.com

Megan Ann Van Pelt
JACKSON LEWIS PC (Indianapolis)
megan.vanpelt@jacksonlewis.com