UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PAUL HALCZENKO Dr., *et al.*, *on behalf of Themselves and those similarly situated,* | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:21-cv-02816-JPH-MG |
| ASCENSION HEALTH, INC., *et al.*, | ) ) ) | |
| Defendant. | ) ) | |
| ST. MARY'S HEALTH, INC., ST. MARY'S WARRICK HOSPITAL, INC., | ) ) ) | |
| Counter Defendants. | ) ) | |
| KAYLYN APPLEGATE, *et al.*, *on behalf of Themselves and those similarly situated,* | ) ) ) | |
| Consol Plaintiffs, | ) ) | |
| v. | ) ) | |
| ST. VINCENT HEALTH, INC., *et al.*, | ) ) | |
| Consol Defendants. | ) ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II. PROCEDURAL BACKGROUND....................................................................... 4

    A.  Complaints Filed in *Halczenko* and *Applegate* Cases.............................. 4

    B.  Defendants' Earlier Filed and Similar Motion to Dismiss.......................... 5

    C.  Settlement in Michigan Case and Impact of that Settlement on the Instant
        Proceedings ............................................................................................... 5

III. ARGUMENT ..................................................................................................... 6

    A.  Motion to Dismiss Standard...................................................................... 6

    B.  Plaintiffs Have Adequately Alleged a Bona Fide Religious Belief that Conflicts
        with an Employment Requirement ............................................................ 8

        1.  Defendants Have Mis-stated the Rule 12(b)(6) Standard for Evaluating
            Title VII claims in the Seventh Circuit....................................... 8

        2.  The District Court Decisions Upon Which Defendants' Rely Do Not
            Support Dismissal Here ............................................................. 12

    C.  Plaintiffs Halczenko, Jimenez, Gillespie, Fralic, Evans, and Olejnik Have Alleged
        that they Requested a Religious Accommodation and that it was Denied ........... 16

    D.  Vaccinated Employee Patrick Fowler has Adequately Alleged that He Suffered an
        Adverse Employment Action.................................................................... 17

    E.  Count II Adequately Alleges a Religious Discrimination Claim Against
        Defendants .............................................................................................. 23

    F.  Plaintiffs' Claims Cannot Be Dismissed Based on Defendants' Undue Hardship
        Defense .................................................................................................. 26

        1.  The Complaint is Clear that Plaintiffs' Have Alleged Defendants'
            Undue Hardship Defense is Factually Unsupportable......................... 26

        2.  Dismissal Pursuant to Defendants' Undue Hardship Defense is
            Inconsistent with Seventh Circuit Precedent and *Groff v. DeJoy* ............ 29

    G.  The Consolidated Complaint Adequately Alleges Actionable Retaliation........... 38

        1.  Ascension's "Resign to Apply" Ploy........................................ 38

        2.  Ascension's Retaliatory Suspensions Without Pay ................................. 47

        3.  Retaliatory Lengthy or Indefinite Suspensions and Employment
            Terminations can be Pursued by Plaintiffs who were not Offered to Return
            to Work After they Filed Their EEOC charges ......................................... 51

    H.  Plaintiffs Provided Adequate Notice of their EEOC Charges to Defendant
        Ascension Health Alliance Inc. and an Opportunity to Participate in the EEOC

Proceedings and Defendants Concealed Ascension Health Alliance's Relationship to the Remaining Defendants ............................................................................ 53

I.      Plaintiffs Adequately Allege Breach of Contract Claims ..................................... 57

J.      Plaintiffs Have Preserved Class Claims for Employees who were Coerced into Receiving the Vaccine ........................................................................................... 58

        1.      Plaintiffs have Exhausted their Administrative Remedies ........................ 59

        2.      Plaintiffs' Class Claims Share Common Issues of Law and Fact ............. 59

        3.      Plaintiffs' Claims are Typical of the Claims or Defenses of the Class ..... 60

        4.      Sincerity of Religious Beliefs is no Obstacle to Class Treatment Here ... 60

IV.     CONCLUSION ........................................................................................................ 64

## **TABLE OF AUTHORITIES**

Page(s)

Cases

*Aaron v. Durrani*,
  No. 1:13-CV-202, 2014 WL 996471 (S.D. Ohio Mar. 13, 2014)............................................ 58

*Acevedo-Cosio v. PIH Health Hosp. Whittier*,
  No. 22-NW-CV-00509, 2023 WL 6299585 (Cal. Super. Aug. 24, 2023)............................... 32

*Adeyeye v. Heartland Sweeteners, LLC*,
  721 F.3d 444 (7th Cir. 2013) ....................................................................... 11, 26, 62

*Agee v. Alphatec Spine, Inc.*,
  No. 1:15-CV-750, 2017 WL 5706002 (S.D. Ohio Mar. 27, 2017).......................................... 58

*Algarin v. NYC Health + Hosps. Corp.*,
  No. 1:22-CV-8340 (JLR), 2023 WL 4157164 (S.D.N.Y. June 23, 2023)............................... 31

*Ananias v. St. Vincent Med. Grp., Inc.*,
  No. 1:22-CV-1723-RLM-MPB, 2022 WL 17752208 (S.D. Ind. Dec. 19, 2022)................... 21

*AnchorBank, FSB v. Hofer*,
  649 F.3d 610 (7th Cir. 2011) ................................................................................. 6

*Anderson v. United Airlines, Inc.*,
  No. 23-C-989, 2023 WL 5721594 (N.D. Ill. Sept. 5, 2023) ........................................... 24, 25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................. 7

*Balow v. Olmsted Med. Ctr.*,
  No. CV 22-1668 ADM/JFD, 2023 WL 2776028 (D. Minn. Apr. 4, 2023) ............................ 26

*Beickert v. New York City Dep't of Educ.*,
  No. 22-CV-5265(DLI)(VMS), 2023 WL 6214236 (E.D.N.Y. Sept. 25, 2023)....................... 31

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................ 6, 7, 9

*Berry v. Dep't of Soc. Servs.*,
  447 F.3d 642 (9th Cir. 2006) ................................................................................ 14

*Biden v. Missouri*,
  142 S.Ct. 647, 211 L.Ed.2d 433 (2022) ................................................................ 36

*Blackwell v. Lehigh Valley Health Network*,
  No. 5:22-CV-03360-JMG, 2023 WL 362392 (E.D. Pa. Jan. 23, 2023) ................................. 47

*Bolonchuk v. Cherry Creek Nursing Ctr./Nexion Health*,
  No. 22-CV-02590, 2023 WL 2914812 (D. Colo. Apr. 12, 2023)........................................... 31

*Bordeaux v. Lions Gate Ent., Inc.*,
  No. 222-CV-04244, 2023 WL 8108655, (C.D. Cal. Nov. 21, 2023)....................................... 32

*Brill v. Lante Corp.*,
  119 F.3d 1266 (7th Cir. 1997) ............................................................................... 20

*Brown v. Children's Hosp. of Philadelphia*,
  No. CV 18-2363, 2018 WL 5884545 (E.D. Pa. Nov. 9, 2018).......................................... 14, 15

*Brownmark Films, LLC v. Comedy Partners*,
  682 F.3d 687 (7th Cir. 2012) ................................................................................. 29

*Burlington N. & Santa Fe Ry. Co. v. White*,
  548 U.S. 53 (2006) ............................................................................................. passim
*Cagle v. Weill Cornell Medicine*,
  No. 22-CV-6951 (LJL), 2023 WL 4296119 (S.D.N.Y. June 30, 2023) ............................ 15, 31
*Capuano v. Eli Lilly & Co.*,
  No. 122CV01651SEBCSW, 2023 WL 5722671 (S.D. Ind. Sept. 5, 2023) ...................... 21, 22
*Carlson v. CSX Transp., Inc.*,
  758 F.3d 819 (7th Cir. 2014) ........................................................................... 8, 43, 47
*Carter v. Transp. Workers Union of Am. Loc. 556*,
  353 F. Supp. 3d 556 (N.D. Tex. 2019) .................................................................... 30
*Cheek v. W. & S. Life Ins. Co.*,
  31 F.3d 497 (7th Cir. 1994) ................................................................................. 52
*Clark Cnty. Sch. Dist. v. Breeden*,
  532 U.S. 268 (2001) ......................................................................................... 50
*Coleman v. Donahoe*,
  667 F.3d 835 (7th Cir. 2012) ............................................................................... 37
*Conner v. Raver*,
  No. 22-CV-08867-JST, 2023 WL 5498728 (N.D. Cal. Aug. 24, 2023) ........................... 33
*Cooper v. Fed. Res. Bank of Richmond*,
  467 U.S. 867 (1984) ......................................................................................... 63
*Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*,
  555 U.S. 271 (2009) ......................................................................................... 43
*Dailey v. HSHS Med. Grp.*,
  No. 19-CV-282-JPG-MAB, 2019 WL 2772532 (S.D. Ill. July 2, 2019) ............................ 9
*Daw v. Consol. City of Indianapolis & Marion Cnty.*,
  No. 116-cv-02550, 2017 WL 4539916 (S.D. Ind. Oct. 11, 2017) ................................. 58
*D'Cunha v. Northwell Health Sys.*,
  No. 1:22-CV-0988 (MKV), 2023 WL 2266520 (S.D.N.Y. Feb. 28, 2023) ............... 25, 26, 32
Diemond v. Michigan Dep't of Corr.,
  No. 1:20-CV-473,2020 WL 3481540 (W.D. Mich. June 26, 2020) ................................ 46
*Doe(s) v. Pittsburgh Reg'l Transit*,
  No. 2:22-CV-01736, 2023 WL 4867850 (W.D. Pa. July 31, 2023) ............................ 22, 25
*Does 1-2 v. Hochul*,
  632 F. Supp. 3d 120 (E.D.N.Y. 2022) .................................................................... 32
*Doster v. Kendall*,
  54 F.4th 398 (6th Cir. 2022) ............................................................................ 61, 63
*Edwards v. City of Cincinnati*,
  No. 1:22-CV-503, 2023 WL 145898 (S.D. Ohio Jan. 10, 2023) .................................. 46
*E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*,
  575 U.S. 768 (2015) ......................................................................................... 23
*E.E.O.C. v. Concentra Health Servs., Inc.*,
  496 F.3d 773 (7th Cir. 2007) ................................................................................. 9
*E.E.O.C. v. Ilona of Hungary, Inc.*,
  108 F.3d 1569 (7th Cir. 1997) .................................................................. 9, 13, 26, 28
*EEOC v. Joe's Stone Crab, Inc.*,
  220 F.3d 1263 (11th Cir. 2000) ........................................................................ 23, 24

*Ellison v. Inova* ,
  No. 1:23-CV-00132, 2023 WL 6038016 (E.D. Va. Sept. 14, 2023) ....................................... 15
*Equal Emp. Opportunity Comm'n v. N. Mem'l Health Care*,
  908 F.3d 1098 (8th Cir. 2018) ................................................................................................. 40
*Floyd v. Lee*,
  968 F. Supp. 2d 308 (D.D.C. 2013) ......................................................................................... 44
*Gamon v. Shriners Hospitals for Children*,
  No. 3:23-cv-216, 2023 WL 7019980 (D. Or. Oct. 25, 2023) ................................................... 15
*Garczynski v. Accident Fund Insurance Co.*,
  No. 22-cv-12615, 2023 WL 3437294 (E.D. Mich. May 12, 2023) ........................................... 46
*Gaspar v. Linvatec Corp.*,
  167 F.R.D. 51 (N.D. Ill. 1996) ................................................................................................. 60
*Geinosky v. City of Chicago*,
  675 F.3d 743 (7th Cir. 2012) ................................................................................................... 17
*Gratton v. Jetblue Airways*,
  No. 04-civ-7561 (DLC), 2005 WL 1251786 (S.D.N.Y. May 25, 2005) ................................... 43
*Groff v. DeJoy*,
  600 U.S. 447 (2023) ................................................................................................................. 24
*Halczenko v. Ascension Health, Inc*,
  37 F.4th 1321 (7th Cir. 2022) .................................................................................................. 22
*Herrnreiter v. Chicago Hous. Auth.*,
  315 F.3d 742 (7th Cir. 2002) ................................................................................................... 18
*Hunter v. Afgroup Emer*ging,
  No. 22-CV-990, 2023 WL 372204 (E.D. Wis. Jan. 24, 2023) ................................................. 45
*Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*,
  804 F.3d 826 (7th Cir. 2015) ..................................................................................................... 9
*Isaac v. Exec. Off. of Health & Hum. Servs.*,
  No. CV 22-11745-RGS, 2023 WL 8544987 (D. Mass. Dec. 11, 2023) ................................... 33
*Jackson v. NTN Driveshaft, Inc.*,
  No. 115-CV-01321, 2017 WL 1927694 (S.D. Ind. May 10, 2017) ............................................ 9
*Jefferson v. City of Chicago*, No. 97 C,
  4895, 1999 WL 116223 (N.D. Ill. Feb. 26, 1999) ................................................................... 49
*Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*,
  538 F.2d 164 (7th Cir.1976) (en banc ...................................................................................... 52
*Jenkins v. N.Y.C. Transit Auth.*,
  646 F. Supp. 2d 464 (S.D.N.Y. 2009)....................................................................................... 43
*Kennedy v. United States*,
  965 F.2d 413 (7th Cir.1992) ............................................................................................... 10, 56
*Kensu v. Corizon, Inc.*,
  5 F.4th 646 (6th Cir. 2021) ...................................................................................................... 58
*Kluge v. Brownsburg Cmty. Sch. Corp.*,
  548 F. Supp. 3d 814 (S.D. Ind. 2021) ...................................................................................... 14
*Kolupa v. Roselle Park Dist.*,
  438 F.3d 713 (7th Cir. 2006) ..................................................................................................... 9
*Kosenka-Piestell v. Cook County*,
  No 1:23-CV-1462,2023 WL 6936800 (N.D. Ill. Oct. 3, 2023) ................................................ 13

*Krause v. Turnberry Country Club*,
   571 F. Supp. 2d 851 (N.D. Ill. 2008) .......................................................................... 57

*Kristufek v. Hussmann Foodservice Co.*,
   985 F.2d 364 (7th Cir.1993) ...................................................................................... 52

*Kuebler v. Vectren Corp.*,
   412 F. Supp. 3d 1000 (S.D. Ind. 2019) .................................................................... 35

*Lekens v. Swifty Farms, Inc.*,
   No. 420-CV-00228-SEB-DML, 2021 WL 3401255 (S.D. Ind. Aug. 4, 2021) ...................... 49

*Lewis v. Indiana Wesleyan Univ.*,
   36 F.4th 755 (7th Cir. 2022) ...................................................................................... 50

*Luevano v. Wal-Mart Stores, Inc.*,
   722 F.3d 1014 (7th Cir. 2013) ................................................................................ 7, 8

*Lundstrom v. Contra Costa Health Servs.*,
   No. 22-CV-06227-CRB, 2022 WL 17330842 (N.D. Cal. Nov. 29, 2022) ............................ 50

*Mace v. Crouse Health Hosp., Inc.*,
   No. 522-cv-1153, 2023 WL 5049465 (N.D.N.Y. Aug. 8, 2023) ...................................... 31

*Madrigal v. Performance Transp., LLC*,
   No. 21-CV-00021-VKD, 2021 WL 1253795 (N.D. Cal. Apr. 5, 2021) ................................ 46

*McKenzie v. Illinois Dep't of Transp.*,
   92 F.3d 473 (7th Cir. 1996) ...................................................................................... 51

*McReynolds v. Merrill Lynch & Co.*,
   694 F.3d 873 (7th Cir. 2012) .................................................................................... 23

*Mogenhan v. Napolitano*,
   613 F.3d 1162 (D.C. Cir. 2010) ................................................................................ 44

*NC Cap., LLC v. Metabolomic Techs., Inc.*,
   594 F. Supp. 3d 1073 (C.D. Ill. 2022) ...................................................................... 16

No. 3:23-CV-05209-DGE,
   2023 WL 6471627 (W.D. Wash. Sept. 21, 2023) ........................................................ 25

*O'Connor v. Lampo Grp., LLC*,
   No. 3:20-CV-00628, 2021 WL 4480482 (M.D. Tenn. Sept. 29, 2021) ............................ 15

*O'Hailpin v. Hawaiian Airlines, Inc.*,
   583 F. Supp. 3d 1294 (D. Haw. 2022) .................................................................... 50

*Passarella v. Aspirus, Inc.*,
   No. 22-CV-287-JDP, 2023 WL 2455681 (W.D. Wis. Mar. 10, 2023) .............................. 14

*Petermann v. Aspirus, Inc.*,
   No. 22-CV-332-JDP, 2023 WL 2662899 (W.D. Wis. Mar. 28, 2023) .............................. 43

*Porter v. City of Chicago*,
   700 F.3d 944 (7th Cir. 2012) ................................................................................ 9, 21

*Preston v. Eli Lilly & Co.*,
   No. 120CV02978RLYTAB, 2021 WL 5412534 (S.D. Ind. Oct. 5, 2021) .......................... 49

*Privler v. CSX Transportation Inc.*,
   No. 118-cv-1020, 2021 WL 3603334 (N.D.N.Y. Aug. 13, 2021) .................................... 43

*Redmond v. GAF Corp.*,
   574 F.2d 897 ........................................................................................................ 11

*Reichert v. Infusion Partners, L.L.C.*,
   No. CV 22-5450, 2023 WL 4685377 (E.D. La. July 21, 2023) ...................................... 46

*Reynolds v. Fed. Exp. Corp.*,
   544 F. App'x 611 (6th Cir. 2013) ........................................................... 50

*Rodriguez v. City of Chicago*,
   No. 95-C-5371, 1996 WL 22964 (N.D. Ill. Jan. 12, 1996) ....................... 30

*Roe v. Bridgestone Corp.*,
   257 F.R.D. 159 (S.D. Ind. 2009) ........................................................... 60

*Rosario v. Livaditis*,
   963 F.2d 1013 (7th Cir.1992) ............................................................... 60

*Rudin v. Lincoln Land Cmty. Coll.*,
   420 F.3d 712 (7th Cir. 2005) ............................................................... 23

*Sambrano v. United Airlines, Inc.*,
   No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022) ....................... 18

*Savel v. Metrohealth*,
   No. 22-CV-2154, 2023 WL 4490395 (N.D. Ohio July 12, 2023) ............. 33

*Scheidler v. Indiana*,
   914 F.3d 535 (7th Cir. 2019) ............................................................... 44

*Scheuer v. Rhodes*,
   416 U.S. 232 (1974) .............................................................................. 7

*Smith v. City of Greensboro*,
   647 F. App'x 976 (11th Cir. 2016) .................................................. 20, 21

*Smith v. COBX Co.*,
   No. 22-12836, 2023 WL 2578945 (E.D. Mich. Mar. 20, 2023) ............. 46

*Soileau v. Guilford of Maine, Inc.*,
   105 F.3d 12 (1st Cir.1997) ................................................................... 44

*Speaks v. Health Sys. Mgmt., Inc.*,
   No. 522-CV-00077, 2022 WL 3448649 (W.D.N.C. Aug. 17, 2022) ........ 50

*Speer v. Ucor LLC* ,
   No. 3:22-CV-426, 2023 WL 7305037 (E.D. Tenn. Nov. 6, 2023) ........... 24

*Stanley v. ExpressJet Airlines, Inc.*,
   808 F. App'x 351 (6th Cir. 2020) ....................................................... 45

*Stockett v. Muncie Ind. Transit Sys.*,
   221 F.3d 997 (7th Cir. 2000) ............................................................... 18

*Swierkiewicz v. Sorema N. A.*,
   534 U.S. 506 (2002) .................................................................... 7, 8, 10

*Szabo v. Bridgeport Machines, Inc.*,
   249 F.3d 672 (7th Cir. 2001) ................................................................. 6

*Tamayo v. Blagojevich*,
   526 F.3d 1074 (7th Cir. 2008) ......................................................... 8, 53

*Tate v. SCR Medical Transp.*,
   809 F.3d 343 (7th Cir. 2015) ......................................................... 12, 13

*Taylor-Reeves v. Marketstaff, Inc.*,
   No. 17-CV-05416, 2019 WL 3716919 (N.D. Ill. Aug. 7, 2019) ............. 45

*Together Emps. v. Mass Gen. Brigham Inc.*,
   573 F. Supp. 3d 412 (D. Mass. 2021) ................................................... 50

*U.S. Navy Seals 1–26 v. Biden*,
   27 F.4th 336 (5th Cir. 2022) ............................................................... 62

*U.S. Navy SEALs 1–26 v. Austin*,
    594 F.Supp.3d 767 (N.D. Tex. 2022) ........................................ 63
*United States v. Lewis*,
    411 F.3d 838 (7th Cir. 2005) ................................................ 29
*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
    570 U.S. 338 (2013)............................................................... 50
*Villareal v. Rocky Knoll Health Ctr.*,
    No. 21-CV-729, 2021 WL 5359018 ...................................... 30
*Wal-Mart Stores v. Dukes*,
    564 U.S. 338 (2011)........................................................ 59, 61, 63
*Washington v. Illinois Dept. of Revenue*,
    420 F.3d 658 (7th Cir. 2005) ................................................ 40
*Weixel v. Bd. of Educ. of City of New York*,
    287 F.3d 138 (2d Cir. 2002)................................................. 44
*Wisner v. Truck Central, a Subsidiary of Saunders Leasing Sys.*,
    784 F.2d 1571 (11th Cir.1986) ............................................. 28

Statutes

42 U.S.C. § 2000e-2(a) ................................................................ 21
42 U.S.C. § 2000e-2(a)(1)............................................................ 18
42 U.S.C. § 2000e-3(a) ..................................................... 39, 42, 43

Rules

Federal Rule of Civil Procedure Rule 7.1 .......................... 54, 55, 57
Federal Rule of Civil Procedure 7.1(a) ...................................... 53
Federal Rule of Civil Procedure 7.1(a)(1) .................................. 55
Federal Rule of Civil Procedure 12(b)(6) ................................. 6, 8

Other Authorities

7A Charles A. Wright et al., *Federal Practice and Procedure* § 1763.1, at 290 (4th ed. 2021).. 61
86 Fed. Reg. ................................................................................. 36
William B. Rubenstein, *Newberg on Class Actions* § 3:3 (5th ed. 2011)..................................... 63

Plaintiffs, by counsel, in response to Defendants' Motion to Dismiss Consolidated Action Complaint, Dkt. 156, (the "Motion"), respectfully submit the following response.

## I.    INTRODUCTION

This case is about Ascension's intentional decisions to not comply with federal law, deprive employees of their religious rights, and coerce employees to be vaccinated despite their religious beliefs.

In the summer of 2021, the Ascension Defendants decided to implement a strict COVID-19 vaccination mandate without individually assessing applications for religious exemptions or providing a real opportunity for employees with religious objections to obtain exemptions to the mandate.[1] While Ascension told employees[2] that it would properly consider and process applications for religious exemptions to the vaccine as required by federal law,[3] Ascension never planned to do so.

At the same time, Ascension's President told all Ascension employees that vaccination was a "Catholic . . . moral imperative," citing statements of Pope Francis and implying that all religious objections were not well-founded.[4] Ascension disclosed employees' confidential religious exemption applications to co-workers to subject the applicants to pressure from co-workers,[5] and Ascension predetermined that it would uniformly deny nearly all religious exemption applications without conducting the individualized assessment required by Title VII.[6]

---

[1] *See* Dkt. 134 (Consolidated Complaint), ¶¶4-13, 15-17, 21-23, 54-56, 152, 163, 172, 179, 187, 196, 204, 211, 221, 231, 242, 250, 257, 264, 272, 279, 286, 298, 311, 319, 327, 335, 343, 351, 359, 367, 375, 383, 391, 399, 407, 414, 422, 430, 438, 446, 487, 495, 503, 511, 519, 527, 536, 547, 557, 569, 577, 594, 602, 610, 618, 627, 636, 644, 652, 659, 669, 681, 692, 702, 715, 723, 731, 739, 747, 755, 774, 796, 805, 813, 821, 829, 837, 853, 861, 869, 991-92, 1055.
[2] Dkt. 134, ¶961.
[3] Dkt. 134, ¶962.
[4] Dkt. 134, ¶¶950, 953, 1077-80.
[5] Dkt. 134, ¶¶87.
[6] Dkt. 134, ¶¶991-1004.

Even worse, because Ascension's leadership did not respect the religious beliefs of employees who sought exemptions to vaccination, Ascension purposefully and cynically engineered its processing of exemption applications to apply maximum pressure on applicants to capitulate to Ascension's demand that they become vaccinated despite their religious convictions.[7] Even employees who worked remotely and did not come into contact with other patients were subject to this pressure program.[8]

Ascension spread the word through its supervisors that religious exemptions were being managed solely out of corporate headquarters and most would be denied, implying that seeking an exemption would undercut the applicants' standing within the organization.[9]  Ascension told its employees that a failure to be vaccinated would be "deemed a voluntary resignation,"[10] and non-vaccinated employees would be terminated by November 12, 2021.[11] Ascension further required applicants for religious exemptions to agree to resign their position as a condition for seeking an exemption.[12]  Then Ascension further ramped up the pressure to give in by purposefully not approving or denying exemptions on a rolling basis, instead holding onto the applications and providing no response to applicants until about a month remained before the deadline to be vaccinated.[13]

Ascension repeatedly told employees that those who were not vaccinated and did not receive the vaccine would be suspended and ultimately terminated, without exception.[14] Ascension intended that its employees would feel the full pressure of the threat of termination

---

[7] Dkt. 134, ¶¶961-1030.
[8] Dkt. 134, ¶¶75, 951.
[9] Dkt. 134, ¶¶965-66, 984-86.
[10] Dkt. 134, ¶964.
[11] Dkt. 134, ¶967.
[12] Dkt. 134, ¶¶972-977.
[13] Dkt. 134, ¶¶5-6, 987-990.
[14] Dkt. 134, ¶¶966-67.

and for this to coerce them into being vaccinated against their conscience.[15] When employees asked, they were guaranteed that if they had been denied an exemption there was no chance that Ascension would reverse the denial.

Ascension's scheme to circumvent the processes required by Title VII and pressure employees into receiving vaccinations was partially successful. An unknown number of Ascension employees whose religious objections were denied with little or no scrutiny were tricked into getting the vaccine without receiving the Title VII compliant exemption process required by federal law.[16] Then, weeks after Ascension's supposedly unchangeable deadline to be vaccinated had passed many employees who were denied religious exemptions and did not get vaccinated were brought back to work and belatedly given religious exemptions.[17]

Those employees suspended without pay who were brought back to work were not compensated for their unlawful suspension.[18] Many other employees denied religious exemptions were simply terminated in violation of Title VII for their alleged non-compliance with Ascension's unlawful vaccination policy.[19] Others were constructively discharged.[20] Ascension's response to those who succumbed to the pressure and were vaccinated after Ascension made a mockery of the religious exemption review process but before Ascension reversed course and started granting religious exemptions has effectively been, *the joke's on you, we owe you nothing*.[21]

---

[15] Dkt. 134, ¶¶4-8, 1058.
[16] Dkt. 134, ¶22.
[17] Dkt. 134, ¶¶23-24.
[18] Dkt. 134, ¶28.
[19] *See, e.g.*, Dkt. 134, ¶¶25-53, 171, 223, 314, 425, 455, 561-62, 648, 656, 673, 695, 698, 707, 791, 848, 857, 872-73.
[20] *See, e.g.*, Dkt. 134, ¶¶157-59, 200, 237, 281, 293, 306, 395, 515, 530-31, 539-41, 582, 598, 606, 766, 784-88, 800-01, 833, 841, 845, 864-65.
[21] *See* Dkt. 134, ¶¶402-03, 784-88, 989.

In response to Plaintiffs' comprehensive complaint detailing how Ascension discriminated against their religious beliefs,[22] Ascension has filed a motion to dismiss. However, Ascension's motion largely relies on misinterpretations of caselaw and Plaintiffs' complaint. Defendants misstate the motion to dismiss standard in the Seventh Circuit, claiming that allegations must be substantially more detailed than precedent requires. Defendants claim that the court can decide their undue hardship affirmative defense as a matter of law even though there are substantial factual questions that must be resolved. Even worse, when it comes to claims against the primary corporate wrongdoer and maestro of their mandate mayhem, Ascension Health Alliance (AHA), Defendants seek to take advantage of their own failure to comply with Federal Rule 7.1 and to profit from disregarding their duty to disclose that AHA is the parent company of the nationwide Ascension enterprise. For these and other reasons the Motion should be denied.

## II.   PROCEDURAL BACKGROUND

### A.   Complaints Filed in *Halczenko* and *Applegate* Cases

The original complaints in this consolidated case were filed on November 8, 2021, (*Halczenko* case), Dkt. 1, and May 27, 2022 (*Applegate* case), Dkt. 1. Several amended complaints were successively filed in both cases to accommodate the addition of new Plaintiffs to the cases soon after they received EEOC right to sue letters. Due to the timing of receiving right to sue letters, all Plaintiffs could not have been added to the complaints at the outset of the case. For instance, over Defendants' objection, on May 23, 2023, the Court granted Plaintiffs' leave to file a Fifth Amended Complaint in *Applegate*. Dkt. 108.

---

[22] The Consolidated Complaint is further supported by 133 Exhibits incorporated by reference into the Complaint, including two exhibits filed under seal. Dkt. 138-1 – 138-131, 139-1, 139-2.

Also over Defendants' objection, the Court granted Plaintiffs' motion to consolidate the *Halczenko* and *Applegate* cases on May 19, 2023. Dkt. 107 (*Applegate*), Dkt. 126 (*Halczenko*). Plaintiffs filed their Consolidated Complaint on June 9, 2023. Dkt. 134 (*Halczenko*).

  **B.**  **Defendants' Earlier Filed and Similar Motion to Dismiss**

Defendants filed an Answer to Plaintiff's First Amended Complaint in the *Applegate* case on October 4, 2022. Defendants filed their Answer to Plaintiff's Fourth Amended Complaint in the *Applegate* case on January 19, 2023. Dkt. 62. Defendants then filed their Motion to Dismiss Plaintiffs' Fourth Amended Complaint and supporting brief in the *Applegate* case on January 20, 2023, Dkts. 63, 64, raising many arguments of the same arguments contained in the instant Motion to Dismiss filed on December 15, 2023. On April 7, 2023, the *Applegate* Plaintiffs filed their Response in Opposition to Defendants' Motion to Dismiss, Dkt. 97, and their Motion to File an Overlength Response of sixty-one (61) pages. Dkt. 98. Due to the stay referenced below, the motion to dismiss filed in *Applegate* was not ruled on, and following consolidation that case has been closed.

  **C.**  **Settlement in Michigan Case and Impact of that Settlement on the Instant Proceedings**

On April 24, 2023, Ascension and counsel for a group of Michigan Plaintiffs with a pending case before the U.S. District Court for the Western District of Michigan captioned *Albright v. Ascension Michigan*, No. 1-22:cv-00638-JB-SJB (W.D. Mich.), filed July 22, 2022, (the "*Albright* case") filed a motion for approval of a nationwide class action settlement which overlapped many, but not all, of the nationwide class claims in the *Halczenko* and *Applegate* cases.

On April 28, 2023, two days after the Michigan court preliminarily approved the nationwide class settlement, Ascension sought a stay of proceedings in the *Halczenko* and

*Applegate* cases based on the *Albright* nationwide settlement. A stay was granted by this Court

on July 10, 2023, and this case has been continuously stayed since that time, except for allowing

Ascension to file on or before December 15, 2023, a responsive pleading to, or motion to

dismiss, the Consolidated Complaint. Dkt. 144 (Jul. 10, 2023), Dkt. 148 (Aug. 11, 2023),

Dkt. 151 (Sept. 7, 2023), Dkt. 155 (Dec. 15, 2023).

All Plaintiffs in the instant case either timely opted out of the *Albright* settlement or their

claims were not covered by the settlement because they asserted claims that they were injured by

being coerced to receive a COVID-19 vaccine contrary to their religious beliefs due to

Defendants violations of Title VII. The *Albright* settlement was approved by the Michigan court

by final order dated November 2, 2023. Two appeals have been filed with the Sixth Circuit Court

of Appeals challenging the *Albright* proceedings and settlement: (1) Case No. 23-1595 (fully

briefed and awaiting determination) and (2) Case Nos. 23-1996 & 23-2019 (Appellants' Brief

filed January 30, 2024).

## III.  ARGUMENT

### A.  Motion to Dismiss Standard

A Fed.R.Civ.P. 12(b)(6) motion to dismiss tests the legal sufficiency of the allegations in

the complaint. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001).

"[D]etailed factual allegations" are not required. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007). When evaluating a motion to dismiss the reviewing court views the complaint "in the

light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and

making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v.

Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). All factual allegations in the complaint must be taken

as true and all inferences made in the plaintiff's favor because "even if doubtful in fact" as "Rule

12(b)(6) does not countenance…dismissals based on a judge's disbelief of a complaint's factual

allegations." *Twombly*, 550 U.S. at 555–56 (internal citations and quotation marks omitted). Due to the duty to construe all factual allegations and inferences in a plaintiff's favor, "a well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

In the context of Title VII, the Supreme Court has made clear, "[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). Thus, the Court rejected the idea that "requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss" *Id.* at 511, and concluded, "it is not appropriate to require a plaintiff to plead facts establishing a prima facie case[.]" *Id.*

*Swierkiewicz* only requires that a Title VII discrimination complaint "gives respondent fair notice of the basis for petitioner's claims." *Id.* at 514. The Court specifically held that, "the Federal Rules do not contain a heightened pleading standard for employment discrimination suits" *id.,* concluding "Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits. 'Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" *Id.* at 515. The Seventh Circuit applies the lenient *Swierkiewicz* pleading standard for Title VII claims post-*Twombly*.

In *Luevano v. Wal-Mart Stores, Inc*., 722 F.3d 1014, 1028 (7th Cir. 2013), the Seventh Circuit observed, "Neither *Iqbal*[23] nor *Twombly* overruled *Swierkiewicz*, and it is our duty to apply the Supreme Court's precedents unless and until the Supreme Court itself overrules them." Therefore, in Title VII cases in the Seventh Circuit, a "complaint merely needs to give the

---

[23] Referring to *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

defendant sufficient notice to enable him to begin to investigate and prepare a defense." *Luevano*, 722 F.3d at 1028 (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir. 2008)).

A year after *Luevano* the Seventh Circuit again confirmed the vitality of *Swierkiewicz*, stating "Title VII claims are not subject to a heightened pleading standard. *Swierkiewicz*, 534 U.S. at 513–15, 122 S.Ct. 992. Employers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014). In *Carlson* the court criticized a district court judge in a Title VII case who had "demanded too much at the pleading stage . . . to reach a standard that is rarely realistic before discovery," again recognized "the important distinction the Supreme Court drew in *Swierkiewicz* between pleading requirements and evidentiary requirements," and held "that plaintiff need not plead elements of prima facie case under [the] indirect proof method." *Id*.

    **B.**    **Plaintiffs Have Adequately Alleged a Bona Fide Religious Belief that Conflicts with an Employment Requirement**

        **1.**    **Defendants Have Mis-stated the Rule 12(b)(6) Standard for Evaluating Title VII claims in the Seventh Circuit**

In direct conflict with the holdings of the Supreme Court in *Swierkiewicz* and of the Seventh Circuit in *Luevano* and *Carlson*, Defendants challenge Plaintiffs' alleged failure to adequately plead the "sincerely held religious belief" element of a prima facie case. Dkt. 157, PageID# 5081. Defendants contend, "Plaintiffs have not identified a single religious belief that any of them sincerely held that conflicted with the vaccine requirement." Dkt. 157, PageID# 5082.

In the Seventh Circuit a plaintiff bringing a claim for intentional discrimination under Title VII must show that "his religious belief or practice conflicted with an employment

requirement, and . . . his need for an accommodation of that religious belief or practice was a motivating factor in the employer's adverse employment decision." *Jackson v. NTN Driveshaft, Inc.*, No. 115-CV-01321, 2017 WL 1927694, at *1 (S.D. Ind. May 10, 2017). "Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to make a reasonable accommodation of the religious practice or to show that any reasonable accommodation would result in undue hardship." *Porter v. City of Chicago*, 700 F.3d 944, 951 (7th Cir. 2012); *accord E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir. 1997). However, as explained above, *the prima facie case elements are not part of the pleading standard for articulating Title VII claims*.

Defendants miss that Seventh Circuit law does not require a complaint to "include factual allegations corresponding to each aspect of a prima facie case." *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006). Instead "[i]t is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits (such as the date) that will let the defendant investigate. A full narrative is unnecessary." *Id.*

In *Luevano*, *Tamayo* and *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007), among other cases, the Seventh Circuit has repeatedly confirmed that the *Kolupa* pleading standard is still (in all relevant parts) good law after the Supreme Court's decision in *Twombly. See also Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833 (7th Cir. 2015). ("A complaint that identified 'the type of discrimination' the plaintiff thought occurred, 'by whom, ... and when'" was "all [the plaintiff] needed to put in her complaint.'). The *Twombly* standard merely requires "fair notice of what her claim is and [the employee's] grounds for asserting the claim." *Dailey v. HSHS Med. Grp.*, No. 19-CV-282-JPG-MAB, 2019 WL 2772532, at *2 (S.D. Ill. July 2, 2019) citing *Twombly*, 550 U.S. at 555.

9

*Swierkiewicz* likewise merely requires "fair notice of the basis for petitioner's claims." 534 U.S. at 514.

Defendants have received fair notice of Plaintiffs' religious discrimination claims, including the nature of each Plaintiff's religious beliefs. In fact, as alleged in the Consolidated Class Action Complaint, Defendants required Plaintiffs to submit religious exemption requests through an online portal process[24] by which Defendants gave each employee *a limited number of characters*[25] in which to explain their religious beliefs. Thus, Defendants have in electronic form a description of each Plaintiffs' (and indeed each class members') religious beliefs.

No religious belief of any Plaintiff was ever challenged,[26] confirming both that (1) Defendants have always had all the information they ever required of each Plaintiff regarding their religious beliefs and (2) Defendants have uniformly accepted those beliefs as valid. Indeed, during the religious exemption process had a Defendant informed any Plaintiff that the Defendant wished additional information regarding Plaintiff's beliefs that Plaintiff could have provided additional information.[27] Because no such request was ever made by Defendants, Defendants have confirmed through their conduct that the explanation of religious belief given by each Plaintiff and class member was sufficient. Thus, Defendants can and should be estopped from engaging in further inquiry regarding class members' beliefs. *See, e.g.*, *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir.1992) (equitable estoppel prevents a party from asserting a claim or defense where another party has detrimentally relied on the first party's position). Regardless, under clear Seventh Circuit law the information in Defendants' possession, as alleged in the Complaint, is clearly sufficient to give Defendants fair notice of Plaintiffs' claims,

---

[24] Dkt 132, ¶ 972.
[25] 4,000 characters to be exact, which equates to about 600 words.
[26] Dkt 132, ¶ 958.
[27] Dkt 134, ¶ 959.

satisfying the Seventh Circuit pleading standard for religious discrimination claims.

With respect to religious beliefs, Plaintiffs' Consolidated Complaint alleges:

954.    When Plaintiffs submitted their religious exemption requests, they articulated, to the best of their ability, their sincerely held religious beliefs that prevented them from complying with the vaccination mandate in good conscience. Ascension's online exemption request form gave them limited space to describe their religious beliefs.[28]

955.    In their exemption requests, Plaintiffs explained that they hold sincerely held religious beliefs that fall into one or more of several categories including:

    a.    A belief that abortion is wrong and that receiving the benefit of a product connected to an abortion condones or makes the user complicit with the abortion itself. Because the vaccines were tested and/or developed using fetal cell lines derived from aborted fetuses, those Plaintiffs could not in good conscience and in accordance with their religious beliefs and faithful religious practice receive them.

    b.    A belief that one's body is a temple of the Holy Spirit and should be kept pure; products connected to an abortion, have the effect of manipulating human genetic code, or otherwise contain harmful substances are "unclean" and should not be put into the body.

    c.    A belief that one's body is designed by God therefore one should carefully evaluate what types of substances are put in the body and not use substances which attempt to fundamentally alter God's design for the body. The COVID-19 vaccines alter the way messenger RNA (mRNA) teaches cells within the human body to make a protein or a piece of a protein. As such, mRNA vaccines are man's attempt to re-engineer how proteins are made within the body, rather than trusting in God's design for those proteins and how they are made. Thus, taking a mRNA vaccine would be to putting faith in man's design, rather than God's design, for making proteins, a fundamental building block in the body. Therefore, taking a mRNA product would defile the body.

956.    Such beliefs easily fit within the common understanding of religious beliefs under Title VII which is "that a religious belief is a belief that is considered religious 'in [the] person's own scheme of things' and is 'sincerely held.'" *Adeyeye*, 721 F.3d at 448 (quoting *Redmond v. GAF Corp.*, 574 F.2d 897, 901 n. 12 (7th Cir.1978)).

---

[28] Thus, Plaintiffs have alleged that Defendants have in easily accessible electronic form an articulation of each Plaintiff's beliefs.

957.    There is no dispute from Ascension that each of the COVID-19 vaccines currently available in the United States during 2021-2022 were developed or tested using cell lines derived from aborted babies. In communications to its employees Ascension acknowledged the link between the COVID-19 vaccines and cell lines derived from aborted babies.[29]

958.    Although Ascension received information about the nature of each Plaintiff's and similarly situated individuals' religious objection to the vaccines through its online portal, Ascension never challenged the validity or sincerity of any of the Plaintiffs' or similarly situated individuals' religious beliefs, and instead denied the exemptions exclusively on the grounds of undue hardship.

959.    Had Ascension challenged the sincerity of any person's religious beliefs individuals submitting religious exemption requests could have submitted additional information explaining their beliefs.

960.    When Ascension recalled many of the Plaintiffs and employees of other Ascension Entities to work they granted their religious exemption requests thereby acknowledging the validity of their sincerely held religious beliefs.

The foregoing is a sufficient articulation of Plaintiffs' religious beliefs pursuant to the Supreme Court's holding in *Swierkiewicz* and the Seventh Circuit's *Kolupa-Concentra-Tamayo-Luevano-Huri* line of cases. Defendants notably do not address any of the allegations raised in these paragraphs.

## 2.    The District Court Decisions Upon Which Defendants' Rely Do Not Support Dismissal Here

Defendants cite a single case from the Seventh Circuit Court of Appeals, which addresses the standard for pleading Title VII discrimination claims, *Tate v. SCR Medical Transp.* 809 F.3d 343 (7th Cir. 2015). However, that case actually supports the adequacy of Plaintiffs' allegations. In *Tate*, the Seventh Circuit reversed a district court's dismissal of a sex discrimination claim. *Id.*, at 345. Even though the plaintiff simply alleged that he was "subjected to sexual harassment" and that he was "discriminated against . . . in retaliation for engaging in protected activity, in

---

[29] *See* Questions and Answers about Ascension's Associate COVID-19 Vaccination Policy at 7 (added August 10, 2021) (**App. 12**) ("How can we mandate a vaccine that utilizes fetal cell lines from historical abortions in its development?"). [This document created by Ascension is part of the Complaint and can be found in the record at *Ascension* (Dkt. 1-4) and *Halczenko* (Dkt. 9-13)]

violation of Title VII" this was sufficient to "satisfy[y] th[e] undemanding standard" for pleading a Title VII case. *Id.*, at 346. Although the plaintiff's ADA claim failed, the requirement to plead a "specific disability" is not applicable here. The only other Seventh Circuit decision cited was *EEOC v. Ilona of Hung.*, 108 F.3d 1569 (7th Cir. 1997), which reviewed a district court's judgment following a bench trial. Additionally, the district court cases exclusively discuss the pleading standard for failure to accommodate claims, not retaliation or general religious discrimination claims. Those failure to accommodate cases actually support the adequacy of Plaintiffs' allegations here.

The plaintiff's two-page complaint in *Kosenka-Piestell v. Cook County* fell well short of "the liberal notice pleadings standards of Fed. R. P. 8." No. 1:23-CV-1462, 2023 WL 6936800, at *1 (N.D. Ill. Oct. 3, 2023). The plaintiff failed to allege that she had filed a religious exemption request, that she had "informed defendants that she was unwilling to receive a Covid-19 vaccine for religious reasons" or even "describe defendant's policy." *Id*. Nor did plaintiff allege "what sort of accommodation she believes she needed" or "claim to have requested any such accommodation." *Id*. Therefore, the court concluded that "plaintiff's barebones complaint does not state a claim under Title VII." *Id*. In stark contrast, the Plaintiffs here have comprehensively described Ascension's COVID-19 vaccine policy, specifically alleged that they requested religious exemptions, identified the types of religious beliefs contained in those objections, and described the types of accommodations that Ascension could have offered.

The *Passarella*, case dealt with whether the plaintiffs' objections to the COVID-19 vaccine were religious in nature or constituted personal judgments about vaccine safety. The Court declined to dismiss the plaintiff who "provided a religious basis for her anti-vaccine beliefs" even though the court acknowledged that the "religious basis for [that plaintiff's] anti-

vaccine beliefs [wa]s not thoroughly explained." *Passarella v. Aspirus, Inc.*, No. 22-CV-287-JDP, 2023 WL 2455681, at *7 (W.D. Wis. Mar. 10, 2023) (*appeal pending*). Two other plaintiffs were dismissed because they refused the vaccine based on "personal judgments about vaccine safety and not for religious reasons." *Id.*, at *6. Here, plaintiffs *have* articulated religious bases for their beliefs in their exemption requests in the categories outlined in paragraph 955 of the Consolidated Complaint. Even though they are in possession of every exemption request, Ascension has failed to allege that *any* of the plaintiffs' objections to the vaccine are not religious in nature.

The remaining cases cited by Defendants come from other circuits with different pleading standards than the Seventh Circuit. For example, *Brown v. Children's Hosp. of Philadelphia*, No. CV 18-2363, 2018 WL 5884545, at *1 (E.D. Pa. Nov. 9, 2018), applied a Third Circuit rule requiring employees to allege they had "informed their employers of their religious beliefs prior to the alleged discriminatory action" to make out a prima facie case for discharge on account of religion. *Id.* The Ninth Circuit incorporates a similar element in its Title VII test. *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006). However, as Defendants should know, given they cited the *Kluge* case,[30] in the Seventh Circuit a *prima facie* case does not require this element be stated. Instead, a Plaintiff need merely show the employer's "desire not to accommodate was a motivating factor in an adverse employment action." *Kluge v. Brownsburg Cmty. Sch. Corp.*, 548 F. Supp. 3d 814, 832 n.5 (S.D. Ind. 2021). *vacated on denial of reh'g*, No. 21-2475, 2023 WL 4842324 (7th Cir. July 28, 2023). The

Additionally, some of Defendants' cases involved barebones allegations that fell far short of Rule 8's requirements by failing to provide any description of the religious beliefs or how

---

[30] *See* Motion, Dkt. 157, PageID# 5081.

those beliefs conflicted with the employer's policy. The plaintiff in *Brown* failed to articulate she held *any* religious belief whatsoever that conflicted with her employer's vaccination requirement or that she had informed her employer of any conflicting belief. "Plaintiff allege[d] only that she advised Defendant on a questionnaire that she was opposed to getting a flu shot." *Brown*, No. CV 18-2363, 2018 WL 5884545, at *2. In *Cagle v. Weill Cornell Medicine*, the pro se plaintiff made conclusory allegations that she had "religious beliefs and that those beliefs include 'religious practices of non-vaccination." No. 22-CV-6951 (LJL), 2023 WL 4296119, at *4 (S.D.N.Y. June 30, 2023). Similarly, in *Gamon v. Shriners Hospitals for Children*, the plaintiff simply alleged that she was "devoutly religious," adhered to "principles of a Christian faith," and her "religious beliefs conflicted with the Defendant's COVID-19 vaccine mandate." No. 3:23-cv-216, 2023 WL 7019980 (D. Or. Oct. 25, 2023). Finally, in *O'Connor v. Lampo Grp., LLC*, an employee who was terminated because she violated a prohibition on premarital sex, failed to allege that her faith *required* or *encouraged* premarital sex and she failed to inform her employer of such religious beliefs. No. 3:20-CV-00628, 2021 WL 4480482, *7 (M.D. Tenn. Sept. 29, 2021), *reconsideration denied,* No. 3:20-CV-00628, 2021 WL 4942869 (M.D. Tenn. Oct. 22, 2021). Additionally, the employee failed to prove that she was "terminated based on *her* religious beliefs" as she merely alleged that she had been terminated for premarital sex, not "her religious beliefs regarding premarital sex." *Id*. at *9.

Finally, the last case cited by Defendants focused on whether the articulated objections to the employer's policy were religious or secular in nature. The district court in *Ellison v. Inova Health Care Servs*, concluded that one of the plaintiffs had refused the vaccine "based on concerns of vaccine safety," not religious belief. No. 1:23-CV-00132, 2023 WL 6038016, at *5

(E.D. Va. Sept. 14, 2023).[31] The court, however, decided not to dismiss a claim founded on a belief that taking the vaccine would violate sincerely held convictions about abortion. *Id*, at *6. Here, Defendants have not argued that the grounds articulated in paragraph 955 of the Consolidated Compliant are secular in nature, making the *Ellison* case inapplicable here.

Plaintiffs have met the Seventh Circuit standard for alleging a bona fide religious belief that conflicted with Ascension's COVID-19 mandate, and Defendants' reliance on district court cases outside this Circuit is misplaced.

### C.  Plaintiffs Halczenko, Jimenez, Gillespie, Fralic, Evans, and Olejnik Have Alleged that they Requested a Religious Accommodation and that it was Denied

Defendants argue that the above-named plaintiffs did not allege that they requested a religious accommodation or that it was denied. However, they failed to acknowledge the sworn affidavits from Halczenko, Jimenez, Gillespie, Fralic, and Evans which were attached to the complaint. Each affidavit stated that the affiant had filed a religious exemption request with Defendants and that the request was denied. (Halczenko Aff., Dkt 138-1, PageID ## 3513–19), (Jimenez Aff., Dkt 138-2, PageID ## 3528–33), (Jimenez Supp. Aff., 138-3, PageID ## 3542– 44), (Gillespie Aff., Dkt 138-4, PageID ## 3549–54), (Gillespie Supp. Aff., Dkt. 138-5, PageID ## 3559–61), (Evans Aff., Dkt 138-6, PageID ##3567–3569), (Evans Supp. Aff, Dkt 138-7, PageID ## 3573–55), (Fralic Aff., Dkt 138-8, PageID ## 3582–86), (Fralic Supp. Aff., Dkt 138-9, PageID ## 3590–92). The court can consider these documents because they were attached to the complaint. *See*, *NC Cap., LLC v. Metabolomic Techs., Inc.*, 594 F. Supp. 3d 1073, 1077 n.2 (C.D. Ill. 2022) ("In addition to the allegations in the complaint itself, a court can consider 'documents attached to the complaint, documents that are critical to the complaint and referred to

---

[31] This citation is to the amended memorandum opinion entered by the court. Defendants cited to the initial memorandum opinion entered on July 19, 2023.

in it, and information that is subject to proper judicial notice' when ruling on a motion to dismiss.") *quoting Geinosky v. City of Chicago*, 675 F.3d 743, 745, n.1 (7th Cir. 2012).

Ascension's claim that Ms. Olejnik failed to allege that she requested a religious accommodation and that it was denied is disingenuous because Ascension has a copy of Ms. Olejnik's religious exemption request, their denial of that request, and Ms. Olejnik's EEOC charge laying out those facts. Further, the factual allegations raised by Ms. Olejnik in her complaint specifically state that "Ascension and St. Vincent Anderson's suspension and threatened termination of Ms. Olejnik created severe hardship for Ms. Olejnik and operated as a constructive discharge because even though she was recalled she was told her religious exemption would only be allowed for one year and then it would be re-evaluated." (Dkt. 134, PageID # 3330, ¶ 482.) This allegation makes it clear that Ms. Olejnik applied for a religious exemption, that she was initially suspended (which implies that her exemption request was denied), and then Ascension reversed course and granted her exemption request for one year. Ascension's actions toward Ms. Olejnik follow the same pattern alleged throughout the Consolidated Complaint, of denying religious exemptions, suspending those who applied, and then recalling some of them, while terminating others.

### D. Vaccinated Employee Patrick Fowler has Adequately Alleged that He Suffered an Adverse Employment Action

Facing extreme pressure from Defendants' COVID-19 vaccination policy and worrying about whether he could financially provide for his family, Patrick Fowler ultimately "received the COVID-19 vaccine despite the fact that to do so contradicted his religious convictions." Dkt 134, ¶ 402. After receiving the vaccine, he suffered a heart attack, which Mr. Fowler believed was due to the stress, anxiety, and crisis of conscience created by Ascension's mandate. Dkt 134, ¶ 403.

Ascension argues that Mr. Fowler's claim must be struck because he did "not allege that he was suspended, discharged, or suffered any other employment action." Dkt 157, p. 4. However, an "adverse employment action" is much broader than discharge or suspension. Title VII prohibits discrimination "with respect to [an employee's] compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). Thus, an adverse action is "a materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." *Stockett v. Muncie Ind. Transit Sys.*, 221 F.3d 997, 1001 (7th Cir. 2000) (alteration in original) (internal quotation marks omitted.)  In addition to covering changes to compensation, benefits, or career prospects, a materially adverse action can also include "changing the *conditions* in which [an employee] works . . . in a way that subjects him to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment." *Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002) (emphasis in original).

Here, Defendants discriminated against Mr. Fowler by implementing as a "condition of employment" a vaccination mandate with a convoluted religious exemption process that unlawfully issued blanket denials of religious exemptions irrespective of merit and was purposefully designed to coerce vaccinations from Ascension employees. This unlawful process that violated Title VII coerced Mr. Fowler into receiving the vaccine in violation of his religious convictions. The Fifth Circuit has recognized that harm flows from an employer's decision "to coerce [an employee] into getting a vaccine that violates their sincerely held religious beliefs." *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, at *7 (5th Cir. Feb. 17, 2022).

Specifically, Mr. Fowler alleged that he was "compelled by Ascension's religious discrimination to be vaccinated against [his] conscience inhibiting the free practice of [his] religious beliefs and causing internal physical and emotional turmoil, stress, worry and regret and exposing [him] to physical and long term risks of vaccination to which [he] would have not been exposed had [his] religious rights been respected." Dkt 134, ¶22. Mr. Fowler further alleged that, "facing uncertainty as to whether he could financially provide for his family, Mr. Fowler received the COVID-19 vaccine despite the fact that to do so contradicted his religious convictions. This was a gut wrenching and emotional decision for Mr. Fowler who ultimately felt he had to put his obligation as a father to provide for his family over the exercise of his religious faith." Dkt 134, ¶402. Finally, he alleged that being forced to take the vaccine, "caused him to experience extreme stress and turmoil [and] [o]n September 16, 2021, after receiving the COVID vaccine, Mr. Fowler suffered a heart attack. Mr. Fowler believes that the stress, anxiety and crisis of conscience created by Ascension's mandate and failure to approve his religious exemption caused or contributed to his heart attack." Dkt 134, ¶403. Thus, Mr. Fowler draws a straight line in his complaint from being coerced into taking the vaccine to severe emotional distress and physical injury.

Importantly, Mr. Fowler also alleged that Ascension's "actions did, and were intended to, coerce Plaintiffs and other employees to . . . forgo their religious beliefs and receive the COVID-19 vaccine." Dkt 134, ¶1058.[32] He alleged, that Ascension "established a coercive process calculated to force healthcare workers and staff to abandon their religious objections to the COVID-19 vaccination and receive the vaccination against their will" Dkt 134, ¶4. Mr. Fowler's clear allegations of a purposeful scheme by Ascension to coerce employees into being vaccinated

---

[32] *See also* Dkt. 134, ¶56 ("an effort to . . . coerce those employees to receive the vaccine against their will").

against their will, not just by imposing a vaccine mandate, but by purposefully operating the mandate and religious exemption process in such a way as to break down the will of employees to resist vaccination sets this case far apart from other cases relied upon by Ascension. Mr. Fowler has plainly satisfied the lenient Seventh Circuit pleading standard. See *supra* at pp. 7-10.

Under Defendants' legal theory, an employer can get away with violating Title VII as long as the employee succumbs to the employer's coercion and abandons the dictates of their conscience. This creates a perverse incentive for the employer to increase the coercive pressure to force as many employees as possible to abandon their religious beliefs. As long as those beliefs are abandoned, the employer is immune from any legal consequences for its actions. Yet other types of discrimination are not handled this way. For example, an employee who resigns may bring a Title VII claim if the employee can prove that the resignation was coerced by the employer. *Smith v. City of Greensboro*, 647 F. App'x 976, 980 (11th Cir. 2016) ("Under the coercion or duress theory, we consider whether, under the totality of the circumstances, the employer's conduct in obtaining the employee's resignation deprived the employee of free will in choosing to resign.") In the context of sexual harassment, a "quid pro quo claim . . . typically describes harassment occurring when a supervisor conditions a tangible job consequence on an employee's submission to his sexual demands or advances." *Brill v. Lante Corp.*, 119 F.3d 1266, 1274 (7th Cir. 1997).

Defendants cite no precedential decisions requiring dismissal of Mr. Fowler's claims. Instead, they rely on three district court cases addressing Title VII claims by vaccinated plaintiffs. *See*, Dkt 157, PageID ## 5083–84. However, unlike Mr. Fowler, the plaintiffs in Ascension's cases did not allege a *purposeful scheme* to purposefully push employees into being vaccinated against their religious beliefs, moreover, in each case the court found the plaintiff

lacked standing and Mr. Fowler has clearly alleged cognizable injury, having suffered a heart attack linked to Ascension's actions.

For example, although *Ananias v. St. Vincent Med. Grp., Inc.*, No. 1:22-CV-1723-RLM-MPB, 2022 WL 17752208, at *2 (S.D. Ind. Dec. 19, 2022), dealt with the same defendant as in this case, the district court in *Ananias* dismissed the Plaintiff's claims on *standing grounds* because she had allegedly failed to adequately allege a cognizable injury. The Plaintiff there merely alleged that she had been forced to violate her religious beliefs *because of Ascension's vaccination mandate*. There is nothing in Judge Miller's decision in *Ananias* that indicates that the Plaintiff alleged that Ascension engaged in a purposeful scheme to coerce vaccinations. Therefore, *Ananias* did not address coercion or duress allegations such as in *Smith* or *Brill*, and is not support for dismissing Mr. Fowler's claims which are far different than those alleged in the *Ananias* complaint.

Title VII "prohibit[s] an employer from intentionally discriminating against an employee based on the employee's religion." *Porter v. City of Chicago*, 700 F.3d 944, 951 (7th Cir. 2012) (citation omitted); 42 U.S.C. § 2000e-2(a). To be sure, "not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that 'an … employee did not like would form the basis of a discrimination suit.'" *Id.* at 954. However, as *Smith* and *Brill* suggest, a purposeful scheme to coerce vaccinations over religious objections certainly cannot be accurately called a triviality, and a motion to dismiss is not the appropriate means by which to dispose of such serious allegations.

Similarly, in *Capuano v. Eli Lilly & Co.*, No. 122CV01651SEBCSW, 2023 WL 5722671, at *2 (S.D. Ind. Sept. 5, 2023), Judge Barker relied upon *Ananias* to find that employees who were vaccinated after being denied religious exemptions to Eli Lilly's vaccination mandate

lacked standing to pursue Title VII claims. These employees had alleged that the vaccine mandate had the effect of "forc[ing]" them to take the COVID-19 vaccine in violation of Title VII of the Civil Rights Act of 1964." *Id*. However, unlike Mr. Fowler, the Lilly employees apparently did not contend that Lilly engaged in a purposeful scheme to coerce vaccinations, nor that they had suffered physical injury as a result. Thus, the *Capuano* case is likewise not a basis to dismiss Mr. Fowler's allegations regarding a purposeful scheme and physical injury that flowed directly from that scheme.

The *Ananias* and *Capuano* courts attempt to distinguish the Fifth Circuit's decision in *Sambrano* on the ground that irreparable injury is different than injury required to show standing. *Ananias* at *3-4, *Capuano* at *5. However, this distinction is not supported by case law and is unpersuasive. It is axiomatic that irreparable injury is a subset of injury-in-fact, not the other way around. Had the Fifth Circuit found standing did not exist it would not have had jurisdiction to find irreparable injury. Thus, the failure to find irreparable injury does not imply a lack of standing. For the same reason, the Seventh Circuit's decision on Dr. Halczenko's motion for preliminary injunction in this case does not indicate dismissal is appropriate. The Court of Appeals decided Dr. Halczenko did not suffer irreparable injury; it did not decide he had no injuries. *See Halczenko v. Ascension Health, Inc*, 37 F.4th 1321, 1326 (7th Cir. 2022).

Similarly, the plaintiffs in *Doe(s) v. Pittsburgh Reg'l Transit*, No. 2:22-CV-01736, 2023 WL 4867850, at *2 (W.D. Pa. July 31, 2023) did not allege a purposeful scheme to force employees to submit to the vaccine. Therefore, the persuasive value of Defendants' trilogy of district court cases is limited here where at the motion to dismiss stage the Plaintiffs' allegations that Defendants engaged in a purposeful scheme to coerce employees to submit to the vaccine must be accepted. Thus, Mr. Fowler's claims should not be dismissed.

### E.   Count II Adequately Alleges a Religious Discrimination Claim Against Defendants

Count II of Plaintiffs' Complaint alleges that Ascension engaged in intentional discrimination or "disparate treatment" against Plaintiffs on the basis of their religion. Title VII bans an employer from "mak[ing] an applicant's religious practice, confirmed or otherwise, a factor in employment decisions." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015). "To show discriminatory intent under Title VII, a plaintiff must demonstrate 'that the decisionmaker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects on an identifiable group." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (alterations accepted) *quoting EEOC v. Joe's Stone Crab, Inc.,* 220 F.3d 1263, 1273 (11th Cir. 2000).

As this case moves forward, the Plaintiffs will have the option of using "direct or circumstantial" evidence of "discriminatory motivation" to prove that Ascension intentionally discriminated against them. *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 719 (7th Cir. 2005). Ascension falsely claims that Plaintiffs have failed to allege "that they were treated differently because of their religion. (Dkt. 157, PageID # 5084). According to Ascension, Plaintiffs admit that they were suspended or terminated "because they failed to comply with the vaccination policy." (*Id.*) However, Plaintiffs have never challenged the validity of a vaccination policy per se. Rather, they allege that Ascension discriminated against them by creating a sham religious exemption process to cover up the fact that Ascension "never intended to provide [Plaintiffs] with a reasonable accommodation." Dkt 134, ¶¶ 1090–91. Plaintiffs further allege that Ascension denied the religious exemptions on pretextual grounds without undergoing the individualized assessment required by Title VII. *Id.* ¶¶ 1084, 1086. Additionally, Ascension

treated unvaccinated individuals differently by granting medical exemptions while denying religious exemptions. *Id.* at ¶ 1082.[33]

Ascension's claim that its vaccination policy was facially neutral does not save it from Title VII scrutiny. Instead, a Title VII "disparate impact" claim "prohibits *neutral* employment practices which, while non-discriminatory on their face, visit an adverse, disproportionate impact on a statutorily-protected group." *Joe's Stone Crab, Inc.*, 220 F.3d at 1274. Here, Ascension implemented its purportedly "neutral" policy in a discriminatory manner by, in part, failing to offer an individualized assessment when evaluating religious exemption requests. *See, e.g.*, Dkt 134, ¶¶ 178–79 (explaining that Ascension "failed to individually evaluate and properly assess [a Plaintiff's] request for a religious exemption . . . [and] could have granted [the Plaintiff's] religious exemption without undue hardship.") Further, Ascension's decision to issue blanket denials of religious exemptions instead of attempting to accommodate them demonstrated an intent to implement a "facially neutral" policy in a manner that discriminated against employees with sincerely held religious beliefs.

The majority of the cases cited by Ascension did not address allegations that the employer's religious exemption review process was implemented in a discriminatory manner. In fact, in *Anderson v. United Airlines, Inc.*, most of the plaintiffs who were dismissed from the case did not even request an accommodation. No. 23-C-989, 2023 WL 5721594, at *4 (N.D. Ill. Sept. 5, 2023) ("[F]or the twenty-eight plaintiffs bringing this claim, only three have alleged that they applied for a religious accommodation.") For the remaining plaintiffs who did submit

---

[33] Plaintiff cites to *Speer v. Ucor LLC* to argue that "disability-exemption requests" are handled differently from "religious exemption requests." No. 3:22-CV-426, 2023 WL 7305037, at *2 (E.D. Tenn. Nov. 6, 2023). However, the *Groff v. DeJoy* case narrowed the differences between those two standards by requiring an employer to prove that any accommodation would cause significant increased costs or create a substantial burden in order to establish an "undue hardship." *Groff v. DeJoy*, 600 U.S. 447, 470 (2023). That standard is similar to the ADA "significant difficulty or expense" standard.

religious accommodation requests, the complaint's allegations showed that the employer "responded differently" to each request in stark contrast to Ascension's policy of issuing blanket denials. *Id*. at *4. In *Bartholomew v. Washington*, the employer actually attempted to accommodate the plaintiff's religious belief, but the plaintiff refused the accommodation. No. 3:23-CV-05209-DGE, 2023 WL 6471627, at *5 (W.D. Wash. Sept. 21, 2023). Additionally, although the plaintiff alleged that the employer granted medical exemptions, he failed to identify any individual who actually received one. *Id*. In contrast, the Plaintiffs here have submitted affidavits identifying particular individuals who received *medical* exemptions. Halczenko Aff. ¶ 76, (Dkt 138-1) (Indiana); Jimenez Aff. ¶ 73, (Dkt 138-2) (Indiana); Picchiottino Decl. ¶ 48, (Dkt 138-83) (Wisconsin); Brezillac Aff. ¶ 48, (Dkt 138-79) (Oklahoma). They have thus demonstrated those seeking religious exemptions and those who had a secular basis for their exemption requests were treated differently.

The one case where plaintiff attacked the employer's religious exemption process was in *Doe(s) v. Pittsburgh Reg'l Transit* No. 2:22-CV-01736, 2023 WL 4867850, at *7 (W.D. Pa. July 31, 2023). However, there the plaintiff alleged that the employer was "treat[ing employees] differently because of their *job titles*" not on the basis of religion. *Id*. Because the plaintiff did not link the unfavorable treatment to "religious beliefs" the court dismissed the complaint. *Id*. at *8.

The remaining cases cited by Defendants rely on law not applicable here. The *D'Cunha v. Northwell Health Sys.* case was brought in the Second Circuit which had "instructed that vaccination is a proper condition of employment in the healthcare field." No. 1:22-CV-0988 (MKV), 2023 WL 2266520, at *3 (S.D.N.Y. Feb. 28, 2023) (internal citations omitted). Thus, the district court dismissed plaintiff's Title VII claims, concluding that they were "foreclosed by"

Second Circuit precedent. *Id*. Finally, in *Balow*, the court did not analyze the Title VII claims brought by the plaintiff because the defendant only sought dismissal of the plaintiff's ADA and state law claims. *Balow v. Olmsted Med. Ctr.*, No. CV 22-1668 ADM/JFD, 2023 WL 2776028, at *2 (D. Minn. Apr. 4, 2023). Although the state law claims sought relief for alleged religious discrimination, its nondiscrimination provisions did not "impose an affirmative duty on employers to provide religious accommodations to its employees" unlike in Title VII cases. *Id*. at *4. Therefore, the plaintiff's failure to accommodate claims under the state law were dismissed.

### F.   Plaintiffs' Claims Cannot Be Dismissed Based on Defendants' Undue Hardship Defense

#### 1.   The Complaint is Clear that Plaintiffs' Have Alleged Defendants' Undue Hardship Defense is Factually Unsupportable

Under Title VII "undue hardship" is an affirmative defense as to which Defendants bear the burden of proof. *See*, *e.g*., *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 448 (7th Cir. 2013) ("an explicit affirmative defense for failure-to-accommodate claims if the accommodation would impose an undue hardship on the employer"); *Ilona*, 108 F.3d at 1576 ("The burden of making a reasonable accommodation or of showing that any accommodation would result in undue hardship lies with the employer.").

In *Groff v. DeJoy*, the Supreme Court recently clarified the standard for what constitutes an undue hardship. "In common parlance, a 'hardship' is, at a minimum, something hard to bear.... [U]nder any definition, a hardship is more severe than a mere burden.... [A]dding the modifier 'undue' means that the requisite burden, privation, or adversity must rise to an excessive or unjustifiable level." 600 U.S. 447, 468 (2023). The Court clarified that the "undue hardship" standard described in *Hardison* was met only if a "burden is substantial in the overall context of an employer's business." *Id*.  Therefore, to prove an "undue hardship" an "employer

must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id.* at 470. The Supreme Court definitively rejected the idea that an undue hardship was shown if an accommodation required anything "'more than a *de minimis* cost.'" *Id.* at 468.

Defendants seek to surmount the formidable hurdle of showing a "substantial burden" *through a motion to dismiss* by disingenuously alleging that "Plaintiffs admit that their requested accommodation was denied due to the health and safety risks." Motion, Dkt. 157, PageID# 5088. This claim, however, is false. Plaintiffs made no such admission. Instead, paragraphs 9-11 of the Consolidated Amended Complaint unambiguously state:

> 9.      In many cases, Ascension Health's sole explanation for its denial of religious exemptions was a single sentence emailed to each requester:

> 10.     Due to the nature of your role, approving this accommodation poses undue hardship to the organization *due to increased risk to the workplace and patient safety*.

> 11.     This robotic explanation given by Ascension Health to applicants for religious exemption was pretextual and symptomatic of Ascension Health's failure to consider reasonable accommodations or to properly assess and establish "undue hardship" violated Title VII.[34]

As the foregoing paragraphs make clear, Plaintiffs have never asserted, as Defendants falsely claim, that Plaintiffs' accommodations were "denied due to the health and safety risks." Rather, Plaintiffs have repeatedly made clear that this was the sole explanation that *Defendants* provided for denying Plaintiffs' exemptions, and further, that such explanation was "pretextual, unsupported by Plaintiffs' experiences, and is believed to be inconsistent with Ascension Health's own experience and whatever data it may have from its healthcare facilities over the

---

[34] (Dkt 134, PageID ## 3231–32.)

course of the pandemic."[35] The Complaint explains that, "the pretextual nature of Ascension Health's many religious exemption denials was laid bare when it recalled hundreds of unvaccinated employees to patient-facing positions in December 2021."[36] This evidence of post-discrimination conduct *alone* is sufficient for the jury to discount Defendants' undue hardship defense, as caselaw reflects that post-discrimination employment decisions can be used to rebut an employer's undue hardship defense. *See*, *e.g.*, *Ilona*, 108 F.3d at 1577 (evidence that employer had waited nine months to replace employee undercut undue hardship defense); *see also Wisner v. Truck Central, a Subsidiary of Saunders Leasing Sys.*, 784 F.2d 1571, 1574 (11th Cir.1986) (failure to replace terminated employee is circumstantial evidence employer could have accommodated without undue hardship).

Defendants' mid-December 2021 about-face recall of many Plaintiffs to patient-facing positions is enough to rebut Defendants' undue hardship defense, but there are many more factual reasons articulated in the Complaint explaining why Defendants' undue hardship defense is not believable. For instance, from the beginning the Complaint identifies seven enumerated facts supporting an inference that Ascension's "undue hardship," risk rationale for not granting religious exemptions was pretextual, as well as explaining that, "[t]he idea that employees seeking religious accommodation may be suspended or terminated merely upon a claim of 'increased risk' is flawed as a matter of law."[37] Plaintiffs point out that "merely incanting the abstract notion of 'increased risk' is not equivalent to showing undue hardship" as "[t]he law

---

[35] (Dkt 134, PageID # 3243.) For additional allegations that Defendants' "risk" rationale was pretextual *see* Dkt 134, ¶¶ 26, 67, 86, 1083, 1084, 1086.
[36] (Dkt 134, PageID # 3243.
[37] (Dkt 134, PageID # 3243.)

sensibly imposes a qualitative/quantitative, evidence-based standard for assessing undue hardship,[38] an argument that Defendants do not even attempt to address in their Motion.

Moreover, there are numerous additional factual allegations in the Complaint from which it can be inferred that Defendants' risk-based rationale for denying exemptions was not truthful, that the risks claimed by Ascension were not adequately supported by data,[39] and that the entire religious exemption process was a façade designed to cover purposeful discrimination.[40] Thus, Plaintiffs plainly never conceded in their Complaint and do not concede now that Defendants denied accommodations based on health or safety risks. Defendants' assertion to the contrary is factually baseless and founded solely upon a blatant distortion of Paragraph 9 of Plaintiffs' complaint.

### 2.  Dismissal Pursuant to Defendants' Undue Hardship Defense is Inconsistent with Seventh Circuit Precedent and *Groff v. DeJoy*

Furthermore, as they did with their assertions about the pleading standard for sincerely held religious beliefs, the Defendants have ignored controlling Seventh Circuit caselaw on the undue hardship issue as well. The Seventh Circuit cautions that courts "should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses" because the defenses "typically turn on facts not before the court at that stage in the proceedings" and the "mere presence of a potential affirmative defense does not render the plaintiff's claim invalid." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Further, complaints "do not have to anticipate affirmative defenses to survive a motion to dismiss" making it usually "premature for the district court to dismiss" a claim based on an affirmative defense. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

---

[38] (Dkt 134, PageID # 3244.)
[39] (Dkt 134, ¶¶ 874-948.)
[40] (Dkt. 134, ¶¶ 3-27, 67-87, 1050–1069, 1081–1091.)

Under the *Groff v. DeJoy* standard Defendants cannot merely *allege* an increased safety and liability risk; they must *prove* with evidence that those risks would impose "substantial increased costs" on Ascension and would be a substantial burden in the overall context of Ascension's business. The pre-*Groff v. DeJoy* case, *Villareal v. Rocky Knoll Health Ctr.*, No. 21-CV-729, 2021 WL 5359018 (E.D. Wis. Nov. 17, 2021 rejected a skilled nursing facility's attempt to dismiss a licensed practical nurse's complaint that she was discriminated against due to her religious objection to taking COVID-19 tests. The skilled nursing facility had instituted a policy that required employees to submit to COVID-19 testing every two weeks. *Id.* at *1. The nurse requested an exemption, which the employer denied. *Id.* After the nurse filed suit, the employer sought dismissal pursuant to Rule 12(b)(6) and like the defendants in this case argued that "the question of undue hardship can be determined as a matter of law when…the proposed accommodation would cause or increase *safety risks* or the risk of *legal liability*." *Id.* (emphasis added) However, the district court rejected that argument, explaining that even though the facility believed that granting the nurse's exemption would increase safety risks, the issue of accommodation could not "be resolved on the pleadings alone." *Id.* at *2 quoting *Rodriguez v. City of Chicago*, No. 95-C-5371, 1996 WL 22964, at *3 (N.D. Ill. Jan. 12, 1996).

The *Villareal* court said, while undue hardship might be a "proper basis for a motion for summary judgment" it was not grounds "for a motion to dismiss." *Id. See also Rodriguez*, No. 95-C-5371, 1996 WL 22964, at *3 (N.D. Ill. Jan. 12, 1996) ("Whether a particular accommodation is 'reasonable' or imposes an 'undue hardship' on an employer is a question of fact which cannot be resolved on the pleadings alone."); *Carter v. Transp. Workers Union of Am. Loc. 556*, 353 F. Supp. 3d 556, 578 (N.D. Tex. 2019) ("Whether accommodating Plaintiff's religious beliefs would have imposed an undue hardship on Southwest is a fact-intensive inquiry

that may be addressed at the summary judgment stage or at trial.").

Defendants argue that notwithstanding *Groff's* clarification of *Hardison*, some courts have found that providing a religious exemption would create an undue hardship as a matter of law. However, in those cases accommodating the employee would have required the healthcare entity to violate state law, creating a substantial burden on the employer.  *See Bolonchuk v. Cherry Creek Nursing Ctr./Nexion Health*, No. 22-CV-02590, 2023 WL 2914812, at *6 (D. Colo. Apr. 12, 2023) ("Defendant would have had to violate a state law (i.e., the regulation mandate) in order to accommodate Plaintiff, clearly establishing an undue hardship."); *Algarin v. NYC Health + Hosps. Corp.*, No. 1:22-CV-8340 (JLR), 2023 WL 4157164, at *8 (S.D.N.Y. June 23, 2023) ("Courts have repeatedly dismissed Title VII claims brought against healthcare employers with a mandatory COVID-19 vaccination requirement because providing the sought religious exemption would create an undue hardship on the employer who would be in violation of the state rule.") (citing to Southern District of New York cases.); *Cagle v. Weill Cornell Med.*, No. 22-CV-6951, 2023 WL 4296119, at *4 (S.D.N.Y. June 30, 2023) (explaining that federal district courts in New York had "uniformly rejected claims that an employer is required by Title VII to accommodate a request for a religious exemption from the Mandate at the cost of violating Section 2.61 and thus New York law" and therefore "Plaintiff's exemption request would have imposed an undue burden on Defendant.") *Beickert v. New York City Dep't of Educ.*, No. 22-CV-5265(DLI)(VMS), 2023 WL 6214236, at *4 (E.D.N.Y. Sept. 25, 2023) (relying on Second Circuit caselaw finding that government vaccine mandates were "valid conditions of employment" to support its conclusion that accommodating Plaintiff's exemption request would have imposed an undue hardship); *Mace v. Crouse Health Hosp., Inc.*, No. 522-cv-1153, 2023 WL 5049465, at *7 (N.D.N.Y. Aug. 8, 2023) ("The Court finds that providing the

accommodation that Plaintiff seeks—permission to work unvaccinated in settings where unvaccinated persons who do not have a medical exemption are not permitted to work by New York law—presents more than a *de minimus* burden on the employer."); *Does 1-2 v. Hochul*, 632 F. Supp. 3d 120, 145 (E.D.N.Y. 2022) ("The sole 'accommodation' the plaintiffs seek—a religious exemption from the vaccine requirement—would impose an undue hardship on the Private Defendants because it would require them to violate state law."); *D'Cunha v. Northwell Health Sys.*, No. 1:22-CV-0988, 2023 WL 2266520, at *3 (S.D.N.Y. Feb. 28, 2023) (holding that the plaintiff's requested accommodation was "foreclosed by *We the Patriots USA Inc. v. Hochul*," which had declined to strike down as unconstitutional New York's healthcare worker vaccination mandate even though it did not allow religious exemptions to be granted to healthcare workers.)

Here, Defendants have not found any regulation, state or federal that bars them from providing the requested accommodations to the Plaintiffs. Therefore, Defendants' numerous cases out of the Second Circuit Court of Appeals and the State of New York are simply inapplicable here.

Other *post-Groff* cases cited by Defendants were decided on summary judgment and therefore do not support Defendants' claims that accommodating Plaintiffs would have created an undue hardship as a matter of law. *Acevedo-Cosio v. PIH Health Hosp. Whittier*, No. 22-NW-CV-00509, 2023 WL 6299585 (Cal. Super. Aug. 24, 2023) (deciding plaintiff's nondiscrimination claims under California law at the summary judgment stage); *Bordeaux v. Lions Gate Ent., Inc.*, No. 222-CV-04244, 2023 WL 8108655, (C.D. Cal. Nov. 21, 2023) (resolving plaintiff's Title VII claims on summary judgment and finding that defendant employer faced significant hardship where accommodating plaintiff would cost at a minimum $300,000);

*Isaac v. Exec. Off. of Health & Hum. Servs.*, No. CV 22-11745-RGS, 2023 WL 8544987 (D. Mass. Dec. 11, 2023) (resolving plaintiff's Title VII claims on summary judgment).

The remaining cases cited by Defendants are easily distinguishable. *Savel v. Metrohealth* dismissed plaintiff's claims because they "d[id] not allege that they have been disciplined, discharged, or subjected to materially adverse employment actions." No. 22-CV-2154, 2023 WL 4490395, at *1 (N.D. Ohio July 12, 2023). The court did not address whether the plaintiff's requested accommodations would have constituted an undue hardship. In *Conner v. Raver*, the plaintiff's own complaint and documents attached to it provided specific evidence showing that the employer would have incurred significant costs in accommodating the plaintiff. No. 22-CV-08867-JST, 2023 WL 5498728, at *6 (N.D. Cal. Aug. 24, 2023). Those documents showed that the employer would have had to "either . . . hire an additional employee to perform the duties Plaintiff was hired to perform, or to otherwise overhaul its operations in a manner that permitted the job of Executive Assistant to be performed remotely." *Id.* The court also noted favorably that the employer had "engaged in the consideration of other options" to accommodate plaintiff, such as offering the plaintiff a less invasive form of saliva testing than the required nasal swab. *Id.*

Unlike the *Conner* case, the Plaintiffs' complaint does not support Ascension's claim that accommodating the Plaintiffs would have increased risk to patient health and safety and therefore cause an undue hardship. In fact the complaint expressly alleges that granting the exemption requests *would not* have increased risk to patient health and safety. Plaintiffs extensively cited scientific studies which showed that vaccinations did not materially reduce risk of transmission by infected individuals of the most dominant strain of COVID-19, the Delta variant, which was the variant of concern at the time Plaintiffs' religious exemptions were denied and they were suspended without pay. Dkt 134, ¶¶ 82–84, 884–93. The complaint alleged that

"[i]t was well understood from late July 2021 when Ascension Health's vaccine mandate was announced that the Delta variant was spreading in settings where there is high vaccine coverage." *Id*. at ¶ 891. Additionally, "the high transmissibility of the Delta variant among those who had been vaccinated was confirmed repeatedly in research studies accessible to Ascension Health and St. Vincent." *Id*. at ¶ 892. In fact, "it was known to Ascension Health and Ascension Entities [in the summer of 2021] that a vaccinated person may be as contagious as a non-vaccinated person once they contract the Delta variant." *Id*. at ¶ 898, *see also* ¶ 901 (citing study showing that "vaccinated individuals with breakthrough infections have peak viral load similar to unvaccinated cases."). Therefore, Plaintiffs' complaint concluded "[t]he inability of the COVID-19 vaccines to prevent the *transmissibility* of SARS-CoV-2…was well known by late July 2021 when Ascension Health adopted its vaccine mandate and…when it forged ahead with the wholesale denial of religious exemptions…." *Id*. at ¶ 900.

Plaintiffs also alleged, with citations to numerous journal articles, that alternative mitigation measures such as masking and wearing personal protective equipment were effective at mitigating any risk of COVID-19 transmission among healthcare personnel in healthcare facilities. Dkt 134, ¶¶ 76–78 & n.7. The complaint noted multiple articles that cited studies showing that healthcare facilities following infection control procedures such as masking and using personal protective equipment had been effective at controlling infection. Dkt 134, at ¶¶ 937, 943–45. Plaintiffs alleged that these studies supported their position "that mitigation measures that were already in place in Ascension Health facilities…were reasonable accommodations which would have allowed them to continue working with patients without suspension on November 12, 2021." *Id*. at ¶ 947.

In addition, Plaintiffs' Complaint identified several key factual issues that are relevant to Ascension's undue hardship claim that will be the subject of discovery. One of those issues is whether the protection conferred by natural immunity is comparable to the immunity gained through vaccination and thus should have been considered by Ascension in its evaluation of the religious exemption applications. Dkt 134, ¶¶ 930–33. Another issue is whether Ascension's recall of numerous unvaccinated employees contradicts Ascension's claims that accommodating Plaintiffs' religious exemption requests would be an undue hardship. Dkt 134 ¶¶ 1024–30. Plaintiffs will be submitting discovery to find out whether Ascension has any evidence of increased COVID-19 transmission due to unvaccinated workers.

Defendants cite to two pages from the Center for Disease Control and Prevention (CDC) website and to a World Health Organization article to bolster their argument that unvaccinated healthcare workers pose an increased risk to patient health and safety. Dkt. 157, PageID# 5088–89. However, those materials were not incorporated into Plaintiffs' Complaint and therefore cannot be relied on by this court in evaluating a 12(b)(6) motion. *See Kuebler v. Vectren Corp.*, 412 F. Supp. 3d 1000, 1003 (S.D. Ind. 2019) (noting that "[o]rdinarily, a court only considers the pleading when ruling on a motion to dismiss" except for "certain outside materials that are referred to in the complaint and central to plaintiff's claim.").

Yet, even if the Court could consider these materials, they would not mandate dismissal, rather they highlight the need for further factual development. While Defendants claim the CDC stated that "vaccination reduces the risk of people spreading the virus" Plaintiffs quoted the CDC director as stating that vaccines could not prevent transmission of the virus. *Compare*, Dkt. 157, PageID# 4089 *with* Dkt 134, ¶ 82. Further, the CDC and WHO articles discussing COVID-19 cases among healthcare workers do not address whether the healthcare workers contracted those

cases in healthcare facilities and if so, what mitigation measures the facilities had in place. In this case, the rate of transmission at *Ascension* facilities where mitigation measures were observed is the key factual issue, if Ascension even has such data.[41]

Defendants also claim that the Centers for Medicare & Medicaid Services' (CMS) findings from its vaccination mandate, which were quoted in a Supreme Court opinion, also support their claim for undue hardship. Dkt. 157, PageID# 5088. However, CMS' findings do not provide employers grounds for avoiding their Title VII obligations.[42] As noted in Plaintiffs' Complaint, the CMS mandate clearly stated that employers had to comply with Title VII and evaluate appropriate accommodations to the vaccine mandate, a fact also noted in *Biden v. Missouri*, 142 S.Ct. 647, 211 L.Ed.2d 433 (2022), where the Court said the CMS rule "requires providers to offer medical and religious exemptions[.]" *Biden*, 142 S.Ct. at 651. Thus, if anything, the CMS findings support that Defendants were required to provide religious exemptions and could not disallow them wholesale and merely rely upon the pandemic or the CMS rule to circumvent their Title VII obligation to do so.

Further, Plaintiffs' Complaint highlighted scientific articles cited in the CMS' findings which described studies showing that mitigation measures then in use in healthcare facilities were effective at reducing the spread of COVID-19, providing further evidence that such

---

[41] Plaintiffs have alleged based on their experience and observations that Ascension "lack[s] any data-driven, evidentiary basis for claiming that religious objectors who did not take the vaccines would have materially increased workplace risks." Dt. 134, PageID # 3246. "Plaintiffs report . . . that there have not been significant healthcare worker-to-patient transmissions of the SARS-CoV-2 virus within Ascension healthcare facilities since Ascension healthcare employees began employing rigorous mitigation measures." Dkt 134, PageID # 3247. Furthermore, although Ascension's initial discovery responses stated that transmission rate data would be produced, the documents tendered to Plaintiffs in Defendants' discovery responses do not appear to include such information, pointing even more strongly to Ascension's reliance on "risk" as having been pretextual. *See* Declaration of Cristy Heisey, Dkt 97-1, ¶ 26.

[42] As pointed out in Plaintiffs' Complaint, the CMS rule implementing the healthcare vaccination mandate expressly noted that "employers…may…be required to provide appropriate accommodations, to the extent required by Federal law, for employees who request and receive exemption from vaccination because of a sincerely held religious belief." Dkt 134, ¶ 958 citing 86 Fed. Reg. 61,569.

measures could have provided a reasonable accommodation. Dkt 134, ¶¶ 973, 940–47 & nn.83–92. Additionally, while CMS made findings based on nation-wide data, Ascension's undue hardship affirmative defense turns on evidence from its own facilities. Plaintiffs who worked at many Ascension facilities throughout Indiana and in other states alleged that they were not aware of any transmission of COVID-19 among healthcare workers at Ascension facilities. Dkt 134, ¶ 76.

Finally, Defendants raise a new claim, not made contemporaneously with their religious exemption denials, that government regulations placed more stringent quarantine and testing requirements on Plaintiffs, allegedly making it costlier for Defendants to retain them. Dkt. 157, PageID# 5089 n.3. The failure of Defendants to assert this claim at the time of their employment actions renders it suspect. *See, e.g.*, *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012) (suspicious timing can provide evidence of pretext). Furthermore, here again, Ascension's decision to recall unvaccinated workers undercuts its argument these regulations were the reason for its religious exemption denials.

Because this Court must treat Plaintiffs' allegations as true for the purpose of a motion to dismiss, it must accept Plaintiffs' allegations about COVID-19 vaccines' ineffectiveness at limiting transmission of the Delta variant among vaccinated individuals[43] as well as the effectiveness of infection control measures at reducing transmission[44] and the need to consider natural immunity as offsetting any claim of increased risk.[45] Construing the allegations in Plaintiffs' favor, accommodating Plaintiffs' religious exemptions would not have materially increased risk to patient health and safety or legal liability and therefore Ascension would not

---

[43] Dkt 134, ¶¶ 82–84, 884–93.
[44] *See* Dkt 134, ¶ 73 76–77, 875–78, 902, 937, 942–47.
[45] *See* Dkt 134, ¶¶ 930–33.

have suffered undue hardship.[46] Furthermore, as explained above, there is substantial existing

evidence that Defendants' risk claims are pretextual. Therefore, this Court must deny

Defendants' motion to dismiss Plaintiffs' failure to accommodate claims.

### G.   The Consolidated Complaint Adequately Alleges Actionable Retaliation

#### 1.   Ascension's "Resign to Apply" Ploy

Plaintiffs allege in their complaint: "Attempting to leverage access to the religious

application process itself to require . . . employees to sign away their Title VII rights and

'voluntarily resign' if Ascension denied their application is itself retaliatory and an attempt to

limit the Title VII rights of those requesting religious accommodation."[47] What Plaintiffs refer to

as "Ascension's Resign to Apply [for a Religious Exemption] Ploy" is explained in the

Complaint as follows:

> 972.   Ascension forced applicants for an exemption from its COVID-19 vaccine mandate to use a cumbersome online application system that (1) limited the words they could provide when requesting an exemption and (2) made it appear that exemptions from the vaccine mandate were entirely at Ascension's discretion because Ascension associates were told that they were required to either: (a) take the vaccine or (b) "resign" from employment if their exemption request was not approved.

> 973.   The automated online religious exemption application interface created by Ascension asked applicants to click a drop down stating: "'I Agree' to voluntarily resign if my request is denied and I do not comply."

> 974.   Through this method Ascension actively sought to require its employees to prejudice or limit their Title VII rights (or to believe that they had waived their Title VII rights, including their right to contest Ascension's exemption decision) merely to be able to request an exemption from Ascension's vaccine mandate.

> 975.   Ascension's "resign" requirement messaging was thereafter followed up on by Ascension managers who asked exemption applicants when they were going to "resign."

---

[46] *See* Dkt 134, ¶¶ 1100, 1107–10, 1116–24.
[47] Dkt 134, ¶ 1053.

976.    On November 5, 2021, Ascension notified its associates that any associates not vaccinated by November 12, 2021, "will be suspended" and that failure to be vaccinated by January 4, 2022, "will be considered a voluntary resignation."

977.    Ascension's coercive effort to leverage the exemption process from the outset as a tool to limit its associates' rights and encourage them to (a) believe they had to resign if an exemption was not granted to them, or (b) abandon the exemption process, and (c) had the effect of making some employees believe that the exemption process was entirely at Ascension's discretion, and (d) discouraged Ascension employees from asserting their rights under Title VII.[48]

Pursuant to 42 U.S.C. § 2000e-3(a) "[i]t [is] an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge . . . or participated in any manner in [a] proceeding . . . under this subchapter." "No one doubts that the term 'discriminate against' refers to distinctions or differences in treatment that injure protected individuals." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006). In *Burlington* the Supreme Court found that Title VII's anti-retaliation provision "seeks to . . . prevent[] an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Id*. at 63. The Court found the "antiretaliation provision's 'primary purpose,' [is] '[m]aintaining unfettered access to statutory remedial mechanisms.'" *Id*.

Thus, "the antiretaliation provision . . . is not limited to discriminatory actions that affect the terms and conditions of employment." *Id*. at 64. The Supreme Court has interpreted "the statute to provide broader protection for victims of retaliation than for those whom Title VII primarily seeks to protect, namely, victims of race-based, ethnic-based, religion-based, or gender-based discrimination." *Id*. at 66.

---

[48] *See* Dkt 134, ¶¶ 972–77.

"The antiretaliation provision protects an individual . . .  from retaliation that produces an injury or harm." *Id*. at 67. In *Burlington*, the Court endorsed the Seventh Circuit's view that to show harm "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have '*dissuaded a reasonable worker from making or supporting a charge of discrimination*.'" *Id.* at 68 (quoting *Washington v. Illinois Dept. of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005) (emphasis added). "The antiretaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms. It does so by *prohibiting employer actions that are likely 'to deter* victims of discrimination *from complaining* to the EEOC,' the courts, and their employers." *Id*. at 68 (citation omitted) (emphasis added). This position is consistent with Eighth Circuit precedent which noted that a claimant would have a viable retaliation claim if "the employer were so foolish or ignorant as to adopt a policy of not accommodating religious practices" or if "the employer denied the accommodation on the ground that it was not in fact based on a religious practice *and* fired or refused the employee or applicant because she made the request." *See also Equal Emp. Opportunity Comm'n v. N. Mem'l Health Care*, 908 F.3d 1098, 1103 (8th Cir. 2018) (emphasis in original).

The resign to apply for a religious exemption ploy is just such an employer action obstructing "unfettered access to statutory remedial mechanisms" and likely to "deter victims . . . from complaining to . . . their employer" or to "dissuade[] a reasonable worker from making or supporting a charge of discrimination." It harmed Plaintiffs and those similarly situated in at least four ways.

First, it *fettered* each applicant's statutory *right to seek a religious exemption* by requiring as a precondition to applying for an exemption that the employee agree to resign employment or

comply with vaccination if their request for religious exemption was denied. This created a burden not felt by those who chose not to be vaccinated but who did not apply for a religious exemption, such employees were not required to voluntarily resign. Thus, the "resign to apply" scheme clearly burdened, *i.e.*, "fettered," religious exemption applicants.

Second, the "resign to apply" scheme discouraged employees from seeking religious exemptions by creating a Hobson's choice of resigning in advance or not applying for a religious exemption.

Third, the "resign to apply" scheme actively dissuaded employees ultimately denied a religious exemption from filing EEOC charges by making them believe they had given up the right to do so by voluntarily resigning in exchange for the opportunity to apply for an exemption.

Fourth, the "resign to apply" scheme pressured employees into getting vaccinated over their religious objections because once their religious exemption request was denied, they believed they had waived all other options to retaining their employment other than through receiving the vaccine.

The "resign to apply" scheme was clearly articulated in the EEOC charges filed by all five initial plaintiffs in the *Halczenko* case. For instance, Dr. Halczenko's charge, in which he checked the box for "retaliation" and "respectfully request[ed] that the EEOC investigate on a classwide basis my concerns about Ascension Health Care, Inc. . . . as I believe they have engaged in a pattern of discrimination and retaliation against Ascension associates who have sought religious exemptions to the Ascension Covid vaccine mandate"[49] recites:

> 41.    On September 6, 2021, I submitted my initial request for a religious exemption from Ascension Health's mandate to take one of the Covid-19 vaccines presently available in the U.S. by November 12, 2021.

---
[49] Halczenko EEOC Charge, ¶ 85.

42.     As required by Ascension, my initial request for religious exemption was submitted via a cumbersome online system that limited the number of words that could be submitted in response to various questions set forth by Ascension.

43.     The automated online religious exemption application interface created by Ascension asked applicants to click a drop down stating: "'I Agree' to voluntarily resign if my request is denied and I do not comply."

44.     I found the request for acknowledgment that I would resign if Ascension did not approve my request for exemption confusing and discouraging. It led me to believe that Ascension felt the decision on whether to grant an exemption was completely discretionary and up to Ascension.

45.     As explained below, Ascension denied my exemption request within a matter of days. This quick denial with no opportunity for interaction was also discouraging and made it appear that the exemption process was hopeless, creating pressure to take the vaccine against my religious convictions.

46.     I am aware of co-workers with religious objections to taking the vaccine who were so discouraged about the exemption process and so convinced that if they pushed back that they would lose their job that they felt forced into getting vaccinated and some were vaccinated despite maintaining religious beliefs that conflicted with vaccination.[50]

For each of the foregoing reasons, the "resign to apply" scheme violated 42 U.S.C. § 2000e-3(a) and constituted an impermissible restriction upon "access to statutory remedial mechanisms" within the meaning of *Burlington*.

Plaintiffs acknowledge that the retaliation claim they are making is slightly different from what has become the paradigmatic retaliation claim, in which a plaintiff alleges that a specific adverse action was reactively taken because the employee filed an EEOC charge or brought forward a complaint of discrimination to the employer. The retaliation claim being made here is different *but worse in terms of the protections that Title VII is supposed to provide* in that Plaintiffs allege Ascension engineered a process designed to hinder employees from filing religious exemption requests and/or inhibiting them from pursuing charges of discrimination

---

[50] Halczenko EEOC Charge, ¶¶ 41-46.

with the EEOC. As explained above, such a retaliation claim addressing the process designed by Ascension is actionable, fitting squarely within the interpretation of 42 U.S.C. § 2000e-3(a) set forth in *Burlington*.

In *Carlson*, 758 F.3d at 828, the Seventh Circuit said that "[p]leading a retaliation claim under Title VII requires the plaintiff to 'allege that she engaged in statutorily protected activity and was subjected to an adverse employment action as a result.'" The statutorily protected activity engaged in by Plaintiffs was pursuing a religious exemption request through a process which was set up to deny any accommodation of Plaintiffs' religious beliefs. This application for an exemption is the necessary first step in "an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Burlington*, 548 U.S. at 63. *See*, *e.g.*, *Petermann v. Aspirus, Inc*., No. 22-CV-332-JDP, 2023 WL 2662899, at *3 (W.D. Wis. Mar. 28, 2023) (finding on motion to dismiss that plaintiff had adequately pled "that [plaintiff's] protected activity was her request to be exempted from receiving the [COVID-19] vaccine and that [her employer] retaliated against her for that request by both requiring her to administer COVID-19 vaccine booster shots and by terminating her employment"); *Privler v. CSX Transportation Inc.*, No. 118-cv-1020, 2021 WL 3603334, at *19 (N.D.N.Y. Aug. 13, 2021) ("While the Second Circuit has not expressly determined whether a request for a religious accommodation constitutes 'protected activity' for purposes of a Title VII retaliation claim, District Courts in this Circuit have held that it does."); *Jenkins v. N.Y.C. Transit Auth*., 646 F. Supp. 2d 464, 473 (S.D.N.Y. 2009) (finding a request for religious accommodation constituted protected activity for purposes of a Title VII retaliation claim); *Gratton v. Jetblue Airways*, No. 04-civ-7561 (DLC), 2005 WL 1251786, at *10 (S.D.N.Y. May 25, 2005) ("requests for accommodation of . . . pregnancy do . . . constitute protected activities as defined by Title VII"); *Crawford v. Metro. Gov't of Nashville*

*& Davidson Cnty., Tenn.*, 555 U.S. 271, 276–77 (2009) ("When an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's *opposition* to the activity.") (emphasis in original) (internal citations and quotation marks omitted)

Additionally, because the ADA contains antiretaliation provisions, which are "indistinguishable" from Title VII, its caselaw on "protected activity" is instructive for analyzing Title VII retaliation claims. *See Mogenhan v. Napolitano,* 613 F.3d 1162, 1165 (D.C. Cir. 2010). Under the ADA, requests for an accommodation are protected activity that support a retaliation claim. *See, Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir.1997) ("It would seem anomalous, however, to think Congress intended no retaliation protection for employees who request a reasonable accommodation . . . ."); *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002) (seeking reasonable accommodation of a disability constitutes protected activity under the ADA); *Floyd v. Lee*, 968 F. Supp. 2d 308, 331–33 (D.D.C. 2013) (collecting ADA cases holding that requesting an accommodation is a protected activity.

Defendants argue that Plaintiffs' complaint must be dismissed because making a request for a "religious accommodation" is not a protected activity "as a matter of law." Dkt. 157, PageID # 5090. However, as shown in the cases cited above, Defendants fail to accurately characterize the controlling law in the Seventh Circuit. Defendants do not address the *Burlington*, *Washington*, or *Petermann* cases. In fact, they only cite to a single Seventh Circuit opinion, *Scheidler v. Indiana*, where the Seventh Circuit concluded that a plaintiff had failed to prove her sexual harassment retaliation claim because a single comment in an elevator about another employee's promotion prospects was not a "statutorily protected activity." *Scheidler v. Indiana*, 914 F.3d 535, 542 (7th Cir. 2019). Such a comment is not comparable to the detailed

religious exemption requests submitted by the plaintiffs.

Defendants cite two district court cases from within the Seventh Circuit. An Eastern District of Wisconsin case captioned *Hunter v. Afgroup Emerging Mtks* failed to cite any caselaw from Title VII or ADA cases holding that an accommodation request is protected activity. No. 22-CV-990, 2023 WL 372204, at *3 (E.D. Wis. Jan. 24, 2023). Instead, the court relied on a single sentence from a single case from the Sixth Circuit Court of Appeals. *Id. citing Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x 351, 358 (6th Cir. 2020) *Hunter* is also distinguishable because the plaintiff did not allege that the employer designed the religious accommodation process to discourage accommodation requests or that the employer had pre-determined ahead of time to deny all accommodation requests. *Id*. The *Stanley v. ExpressJet Airlines* case is also distinguishable because the plaintiff in that case failed to "identify a protected activity she engaged in" and the court was unwilling "to fill in the blanks for her." 808 Fed. App'x at 358. Further, even if the plaintiff had appropriately alleged a Title VII retaliation claim, it would have been preempted by federal transportation law. *Id*. The only other case comes from the Northern District of Illinois where a plaintiff was terminated because she left work without permission to "see a doctor for strep throat." *Taylor-Reeves v. Marketstaff, Inc.*, No. 17-CV-05416, 2019 WL 3716919, at *3 (N.D. Ill. Aug. 7, 2019), *aff'd*, 803 F. App'x 29 (7th Cir. 2020). The Court concluded that this action did not constitute "opposing a discriminatory practice under Title VII." *Id*.

Most of the remaining cases cited by the Defendants come out of the Sixth Circuit Court of Appeals and rely on precedent that is not binding on this Court and in fact conflicts with Seventh Circuit precedent. Further, the facts in this case are distinguishable. In *Smith v. COBX Co.*, the plaintiff did not even submit a religious accommodation request and simply alleged that

having "sincerely held religious beliefs that conflicted with the Defendant's vaccine mandate" was sufficient to allege a protected activity. No. 22-12836, 2023 WL 2578945, at *2 (E.D. Mich. Mar. 20, 2023). *Edwards v. City of Cincinnati* dealt with a claim of racial discrimination and the "accommodations" requested by the plaintiff were related to the plaintiff's personal transportation difficulties, not a specific employer policy. No. 1:22-CV-503, 2023 WL 145898, at *5 (S.D. Ohio Jan. 10, 2023). *Diemond v. Michigan Dep't of Corr.* was brought pro se by an inmate at a correctional facility who alleged a litany of claims against the facility. However, a Title VII claim was not one of them. No. 1:20-CV-473, 2020 WL 3481540, at *1 (W.D. Mich. June 26, 2020). Finally, *Garczynski v. Accident Fund Insurance Co.* dealt with a plaintiff who was denied a religious accommodation because the employer determined that the plaintiff "did not meet the criteria for an exemption due to a sincerely held religious belief, practice, or observance." No. 22-cv-12615, 2023 WL 3437294, *3 (E.D. Mich. May 12, 2023). There, the plaintiff did not allege that the exemption was denied on pretextual grounds or that those receiving medical exemptions were treated more favorably than those receiving religious exemptions. *Id.*

The remaining cases cited by Plaintiff from other parts of the United States are also distinguishable. *Madrigal v. Performance Transp., LLC*, dealt with a Fair Employment and Housing Act claim, not a Title VII claim. No. 21-CV-00021-VKD, 2021 WL 1253795, at *1 (N.D. Cal. Apr. 5, 2021). *Reichert v. Infusion Partners, L.L.C.* failed to allege any issues with the religious accommodation procedure implemented by the defendant employer who denied the religious accommodation. No. CV 22-5450, 2023 WL 4685377, at *6 (E.D. La. July 21, 2023). Finally, the district court in *Blackwell v. Lehigh Valley Health Network* dismissed plaintiff's complaint because she had failed to allege that she was terminated or suspended due to her

sincerely held religious beliefs. No. 5:22-CV-03360-JMG, 2023 WL 362392, at *9 (E.D. Pa. Jan. 23, 2023). Therefore, the court dismissed her case for failure to adequately allege that the employer engaged in intentional discrimination on the basis of religion. *Id.*

Plaintiffs have adequately alleged a premeditated scheme to retaliate against those seeking religious exemptions through Ascension's "Resign to Apply" requirement.

### 2.    Ascension's Retaliatory Suspensions Without Pay

In the Consolidated Class Action complaint Plaintiffs alleged that their suspensions without pay were "coercive, prejudicial to Plaintiffs, and in retaliation for Plaintiffs seeking a religious exemption."[51] As explained in the preceding section, seeking a religious exemption under Title VII is a protected activity. Plaintiffs clearly alleged in their EEOC charges that they sought religious exemptions. Pursuant to *Carlson*, the only other required element in pleading a Title VII retaliation claim is an allegation that the plaintiff was "subjected to an adverse employment action as a result" of engaging in the protected activity. *Carlson*, 758 F.3d at 828. Plaintiffs have done so as to the adverse employment action of suspension without pay by alleging the suspensions were "in retaliation for Plaintiffs seeking a religious exemption."[52] Again, the contention here is not that the retaliatory suspensions were reactive, but rather that they were purposeful and planned.

As Plaintiffs have alleged, "Ascension planned to not grant religious exemption requests and . . . the religious exemption process was a charade." Dkt 134, ¶ 1060. When Plaintiffs revealed their religious objection to vaccination through filing an exemption request, they were "target[ed] for adverse treatment,"[53] including through "suspending without pay thousands of

---

[51] Dkt. 134, ¶ 1061.
[52] *Id.*
[53] Dkt 134, ¶ 13.

employees whose religious convictions would not permit them to receive the COVID-19 vaccines."[54] "Ascension's actions were calculated to, and did, put enormous pressure on thousands of healthcare workers to abandon their sincerely held religious beliefs and receive a COVID-19 vaccine or leave employment with Ascension and/or Ascension Entities."[55] Ascension "caused healthcare workers and staff to face the stressful and discouraging prospect of immediate loss of income just before the holiday season and imminent loss of employment at the outset of the new year."[56]

In *Burlington* the Supreme Court found that a 37-day suspension without pay was a "materially adverse" injury even where the employee was later reimbursed for their lost income. *Burlington*, 548 U.S. at 72. The Court pointed out that the Plaintiff in *Burlington* "did not know during that time whether or when [she] could return to work." *Id*. The Court focused on the economic coerciveness of such a suspension, observing that, "[m]any reasonable employees would find a month without a paycheck to be a serious hardship." *Id*.

The Supreme Court quoted the plaintiff in *Burlington* who described "[t]hat was the worst Christmas I had out of my life. No income, no money, and that made all of us feel bad. … I got very depressed." *Id*. This description fits like a glove the coercive nature of the unpaid suspensions that Ascension imposed on November 12, 2021, less than two weeks before Thanksgiving, upon every employee who had sought a religious exemption and not been vaccinated. Ascension purposefully chose this timetable which had an optimum coercive effect.[57]

---

[54] *Id*.
[55] Dkt. 134, ¶ 8.
[56] Dkt 134, ¶ 16.
[57] Dkt. 134, ¶¶ 2-8.

Plaintiffs' contention is that these suspensions without pay were intentionally calculated to force Ascension employees who had sought religious exemptions to give up their religious rights, abandon their religious exemption request and any intent to file an EEOC charge and become vaccinated against their will or abandon their employment.[58] As the Supreme Court said, "[a] reasonable employee facing the choice between retaining her job (and paycheck) and filing a discrimination complaint might well choose the former. That is to say, an indefinite suspension without pay could well act as a deterrent, even if the suspended employee eventually received backpay." *Id.* at 73. Likewise, the "suspension without pay" and the threat of the same to Ascension employees who had sought religious exemptions acted as a deterrent to those employees filing EEOC charges and pursuing their religious rights and induced many to abandon those rights and become vaccinated over their religious objections and against their conscience.

Although the Defendants claim that Plaintiffs must prove a causal connection between the employer's adverse action and the protected activity of opposing a discriminatory policy, that is an issue for summary judgment or trial. Here again, Defendants ignore established law within the Seventh Circuit. At the pleading stage, an employee need not prove a causal link between the plaintiff's protected expression and the adverse employment action. *Lekens v. Swifty Farms, Inc.*, No. 420-CV-00228-SEB-DML, 2021 WL 3401255, at *4 (S.D. Ind. Aug. 4, 2021); *Jefferson v. City of Chicago*, No. 97 C 4895, 1999 WL 116223, at *6 (N.D. Ill. Feb. 26, 1999) (rejecting the defendant's motion to dismiss the plaintiff's Title VII retaliation claim, noting that although the plaintiff has stated these allegations in a conclusory manner, he is entitled to do so); *Preston v. Eli Lilly & Co.*, No. 120CV02978RLYTAB, 2021 WL 5412534, at *4 (S.D. Ind. Oct. 5, 2021) (denying motion to dismiss and noting that plaintiff's Title VII claims cannot be dismissed

---

[58] Dkt 134, ¶ 8.

because the record had not fully developed on whether the adverse employment action had immediate, albeit non-economic, consequences that materially altered employment terms and conditions). Therefore, Plaintiffs have adequately articulated retaliation through Ascension's suspensions without pay and are entitled to discovery on this claim.

None of the cases cited by Defendants address the pleading standard for the causation element of a retaliation claim. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) was appealed from a jury trial. The majority of the remaining cases were decided on summary judgment or a preliminary injunction. *See Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755 (7th Cir. 2022) (summary judgment); *Reynolds v. Fed. Exp. Corp.*, 544 F. App'x 611 (6th Cir. 2013) (summary judgment); *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001) (summary judgment); *O'Hailpin v. Hawaiian Airlines, Inc.*, 583 F. Supp. 3d 1294 (D. Haw. 2022) (preliminary injunction); *Together Emps. v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412 (D. Mass. 2021) (preliminary injunction).

The only cases cited by defendants which were decided at the motion to dismiss stage were brought by pro se defendants and dealt with ADA claims, not Title VII claims. *Lundstrom v. Contra Costa Health Servs.*, No. 22-CV-06227-CRB, 2022 WL 17330842 (N.D. Cal. Nov. 29, 2022); *Speaks v. Health Sys. Mgmt., Inc.*, No. 522-CV-00077, 2022 WL 3448649, at *1 (W.D.N.C. Aug. 17, 2022). Further, there were other important distinctions between those cases and the present case. The plaintiff in *Speaks* failed to even apply for an exemption under the ADA, choosing instead to simply refuse to comply with the vaccination mandate. *Speaks*, No. 522-cv-00077, 2022 WL 3448649, at *2. In *Lundstrom*, the plaintiff focused on attacking the vaccination policy itself but did not address the accommodation process. No. 22-CV-06227-

CRB, 2022 WL 17330842, at *6. Further, the plaintiff was not even disabled, meaning the employer did not unlawfully deny the plaintiff a disability exemption. *Id*. at *4–5.

### 3. Retaliatory Lengthy or Indefinite Suspensions and Employment Terminations can be Pursued by Plaintiffs who were not Offered to Return to Work After they Filed Their EEOC charges

Additionally, multiple employees in both cases have alleged that they were not brought back to work. For instance, Jennifer Maupin, Bethany Monte, Daniella Stafford and Alaynah Weisend were not given the opportunity to return to work at all or on a full-time basis.[59] Plaintiffs have alleged that the failure to bring these employees back to work "rais[es] a strong inference of religious discrimination and/or retaliation for pursuing their religious rights."[60] The retaliatory termination claims of these employees fall within the rule of *McKenzie v. Illinois Dep't of Transp*., 92 F.3d 473, 482–83 (7th Cir. 1996), and can be pursued although they did not reference retaliation in their EEOC charges because the retaliation occurred after they filed their original EEOC charge. Other employees that fall into this category and were discharged or left employment after they filed an EEOC charge include Richard Fulkerson who was discharged on January 5, 2022,[61] and filed his EEOC charge on November 20, 2021[62] and Dr. Joshua Frederick who filed his EEOC charge on December 8, 2021.[63]

Similarly, Dr. Halczenko, who *did* allege retaliation in his EEOC charge, was never brought back to work. This failure to give him an opportunity to return to work after he filed an EEOC charge and when numerous other employees within the Pediatric Intensive Care Unit at Peyton Manning Children's Hospital were brought back to work in the unit unvaccinated

---

[59] Dkt 134, ¶¶ 1035–40. See also *supra* at footnotes 19 and 20.
[60] Dkt 134, ¶ 1040.
[61] Dkt 134, ¶ 315.
[62] Heisey Decl. Dkt. 97-1 (*Applegate*) Attachment A-15, Nov. 20, 2021, EEOC Charge of Richard Fulkerson.
[63] Heisey Decl. Dkt 97-1 (*Applegate*) Attachment A-16, Dec. 8, 2021, EEOC Charge of Dr. Joshua Frederick.

supports an inference of retaliation.[64] Dr. Halczenko similarly falls within the rule of *McKenzie* as this aspect of the retaliation against him occurred after he filed his EEOC charge.

Other employees fall within the rule of *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)*, Kristufek v. Hussmann Foodservice Co.,* 985 F.2d 364, 368 (7th Cir.1993)*, and Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.,* 538 F.2d 164, 167 (7th Cir.1976) (en banc), because their retaliatory discharge was "like or reasonably related and growing out of charges filed with the EEOC." For instance, Della Taylor alleges in the Complaint she "was performing all reasonable requirements of her job and believes she was terminated because she sought a religious exemption."[65] Ms. Taylor filed an EEOC charge on February 12, 2022, after she was discharged, alleging that she had requested a religious exemption and been denied and that "I believe I was denied a reasonable accommodation and discharged due to my religion."[66] Likewise, Chris Parr alleges in the Complaint he sought a religious exemption, was performing all reasonable requirements of his job and was terminated on February 3, 2022.[67] Mr. Parr filed an EEOC charge on March 1, 2022, alleging he sought a religious exemption, was thereafter terminated on February 3, 2022 and believed he had "been discriminated against based on [his] religious objection."[68] Robin Banks filed an EEOC charge on January 28, 2022, specifically alleging that she had sought a religious exemption, that she had been terminated and that her employer had engaged in "retaliation" against her.[69] Juston Zenthofer alleged in his EEOC charge filed on March 31, 2022, that he had submitted a religious exemption request which had been denied and that he "was suspended on November 13, 2021, and "[t]o date, I have not been

---

[64] Dkt 134, ¶¶ 35-36, 1032–34.
[65] Dkt 134,¶ 225.
[66] Dkt 97-1 (*Applegate*), Attachment A-17, Feb. 12, 2022, EEOC Charge of Della Taylor.
[67] Dkt 134, ¶¶ 650–55.
[68] Heisey Decl. (Dkt 97-1), Attachment A-18, Mar. 1, 2022, EEOC Charge of Chris Parr.
[69] Heisey Decl. (Dkt 97-1), Attachment A-20, Jan. 28, 2022, EEOC Charge of Robin Banks.

called to return to work." Mr. Zenthofer said, "I believe I have been discriminated against when the Company denied me a religious exemption, suspended, and then discharged my employment in violation of Title VII of the Civil Rights Act of 1964, as amended."[70] Ashley Kenyon's EEOC charged filed January 28, 2022 states both that she had submitted a request for religious exemption to the COVID-19 vaccine mandate and terminated on or about December 20, 2021 based upon her religion.[71] Such allegations were more than enough to put Ascension on notice of these employees' retaliatory discharge claims.

> **H.   Plaintiffs Provided Adequate Notice of their EEOC Charges to Defendant Ascension Health Alliance Inc. and an Opportunity to Participate in the EEOC Proceedings and Defendants Concealed Ascension Health Alliance's Relationship to the Remaining Defendants**

In early complaints, Plaintiffs identified Ascension Health, Inc. (AH) as operator of the nationwide Ascension hospital system, the instigator and implementer of Ascension's nationwide COVID-19 vaccine mandate, and as a joint employer of all Ascension associates nationwide. However, in November of 2022 Plaintiffs learned for the first time that Defendants were claiming that another entity, Ascension Health Alliance, Inc. (AHA) was actually the nationwide Ascension entity and responsible for the vaccination mandate and denial of religious exemptions.

"The requirement that a party be named in the EEOC charge is not jurisdictional, and it is subject to defenses such as waiver and estoppel." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1089 (7th Cir. 2008). As explained below, estoppel bars AHA's exhaustion of remedies defense.

Federal Rule of Civil Procedure 7.1(a) requires that a "nongovernmental corporate party" file with the court a disclosure statement that:

> (1)   *identifies any parent corporation* and any publicly held corporation owning 10% or more of its stock; or

---

[70] Heisey Decl. (Dkt 97-1), Attachment A-19, Mar. 31, 2022, EEOC Charge of Juston Zenthofer.
[71] Heisey Decl. (Dkt 97-1), Attachment A-14, Jan. 28, 2022, EEOC Charge of Ashley Kenyon.

(2)      states that there is no such corporation.[72]

However, AH's inaccurate corporate disclosure filed on December 3, 2021, in the

*Halczenko* case, did not identify its parent AHA. Instead, AH's initial disclosure stated:

> Pursuant to Federal Rule 7.1, Defendants, Ascension Health, Inc., and St. Vincent
> Hospital and Health Care Center Inc., d/b/a Ascension St. Vincent Hospital ("St.
> Vincent" or "Defendants"), file their Corporate Disclosure Statement. St. Vincent
> advises the Court that the parent company of St. Vincent Hospital and Health
> Care Center, Inc., d/b/a Ascension St. Vincent Hospital, is St. Vincent Health,
> Inc., which is wholly owned by Ascension Health, Inc. No publicly-traded
> corporation owns 10% or more of Ascension Health, Inc.'s stock.

Dkt. 29, PageID# 1096.

Similarly, AH's corporate disclosure filed in the *Applegate* case on July 21, 2022, also

failed to identify AHA as its parent, inaccurately stating:

> Pursuant to Federal Rule 7.1, Defendants state that there is no parent company or
> publicly traded corporation that owns 10% or more of any Defendant's stock that
> is not already identified as a Defendant.

Dkt. 20, PageID# 973.

Neither corporate disclosure identified AHA as the parent company of AH. Moreover,

AH's answers filed in both the *Halczenko* and *Applegate* cases furthered the misdirection

perpetrated through the inaccurate corporate disclosures by stating AH *did* operate a nationwide

hospital system and that AH had adopted a vaccination mandate.[73]

In fact, it was not until a discovery dispute arose in the *Applegate* case in November of

2022, when AH claimed it could not produce documents regarding the Ascension vaccination

mandate because Plaintiffs had allegedly sued the "wrong entity," that Plaintiffs understood they

had been misled by AH into believing AH did not have a parent company. In a discovery

conference on December 9, 2022, in the *Applegate* case, counsel for Plaintiffs stated they would

---

[72] Emphasis added.
[73] *See* December 30, 2022, Brief on Discovery Dispute, (Dkt. 57) (*Applegate* case), PageID#s 4330-4370. Plaintiffs
incorporate herein by reference the description of AH's earlier assertions that AH operated a nationwide hospital
system and adopted a nationwide COVID-19 vaccination mandate.

be filing an amended complaint in the *Applegate* case in the coming days and that they would also amend the complaint in the *Halczenko* case to add AHA as a defendant.

On February 9, 2023, Magistrate Judge Garcia entered his 15-page order in the *Applegate* case resolving the discovery dispute between Plaintiffs and AH that had arisen in November. Judge Garcia's order cut through AH's "wrong entity" defense and required both AH and AHA to produce documents in response to Plaintiffs' discovery requests served on August 23, 2022.

With respect to AH's "wrong entity" claims, Judge Garcia found "AH and AHA have interlocking management structures" and "at the outset of this litigation, AH failed to identify that AHA is its corporate parent as required by Fed. R. Civ. P. 7.1(a)(1) . . . further obfuscating its corporate structure." Dkt. 75 (*Applegate* case), PageID# 4559. Judge Garcia recognized that Defendants' inaccurate corporate disclosure, which failed to identify AHA, "certainly prejudiced Plaintiffs' ability to untangle the labyrinth of corporate entities underneath the Ascension banner." *Id*. (*Applegate* case) at 4560. According to the Court, Defendants' conduct was outside the bounds of expected practice before the Court,[74] and AH's attempt to dodge discovery through its corporate structure shell game "should not have reached the Court." *Id*.

Thus, a week later, on February 16, 2023, just one week before the deadline for amending complaints, and more than fourteen (14) months after this case was filed, Ascension filed "Defendants' Amended Corporate Disclosure Statement" in the *Halczenko* case, identifying Ascension Health Alliance as its corporate parent *for the first time*. Ascension's tardy amended disclosure provides:

> Pursuant to Federal Rule 7.1, Defendants, Ascension Health, Inc., and St. Vincent Hospital and Health Care Center Inc., d/b/a Ascension St. Vincent Hospital, amend their Corporate Disclosure Statement. The parent company of St. Vincent Hospital and Health Care Center, Inc., d/b/a Ascension St. Vincent Hospital, is St. Vincent Health, Inc. Ascension Health is the sole member of St. Vincent

---

[74] Dkt. 75 (*Applegate* case), PageID# 4560 (noting duty "to be forthright").

Health, Inc. *Ascension Health Alliance is the sole member of Ascension Health.* There is no publicly-traded corporation owning 10% or more of Defendants' stock.

Dkt. 96, PageID# 2601 (emphasis added).

In both cases AHA and AH violated the disclosure rules to the prejudice of Plaintiffs. AHA and AH should not be permitted to benefit from these failures. Significantly, AH filed its first false and incomplete disclosure statement at the time that the EEOC charges of the first five plaintiffs in the *Halczenko* case were all pending before the EEOC. Thus, had AH filed an accurate corporate disclosure which identified AHA as its parent at that time, these Plaintiffs would have amended their charges of discrimination to explicitly identify AHA. Likewise, an accurate corporate disclosure in the *Halczenko* case would have given all *Applegate* plaintiffs an opportunity to add AHA as a named respondent in their EEOC charges.

By opposing the Plaintiffs' proposed amended complaints identifying AHA as a defendant in both the *Halczenko* and *Applegate* cases and in their motion to dismiss in this case, the Ascension entities seek to reap the benefit of AH's duplicitous act of filing a false corporate disclosure statement. As noted above, Judge Garcia has already found that AH and AHA have interlocking management structures and taken judicial notice that "[c]ourt filings elsewhere indicate that AH and AHA exchange documents in the normal course such that when AH is sued, counsel for AHA routinely assumes the litigation, noting that it is the correct entity." Order, Dkt. 75 (*Applegate* case), PageID# 4559.

The doctrine of equitable estoppel "precludes one party from asserting a claim or defense against another party who has detrimentally altered her position in reliance on the former's misrepresentation or failure to disclose a material fact." *Kennedy,* 965 F.2d at 417. Plaintiffs reasonably relied upon what AH must concede were false representations or, at best, failures to disclose that it did not have a parent company. Had Defendants timely complied with their

Rule 7.1 obligations plaintiffs would have amended their EEOC charges to explicitly add AHA as a respondent. AH and AHA should therefore be estopped by their own misconduct and unclean hands from contending AHA cannot be added as a defendant in either case. AH and AHA should further be estopped from arguing for dismissal of AHA from this case. Therefore, for this reason there is no basis for dismissing AHA as a defendant.

Defendants also allege that Plaintiffs' complaint should be dismissed because they failed to "exhaust administrative remedies" by filing charges with the EEOC. However, Plaintiffs' complaint expressly alleges that all "Plaintiffs failed their charges of discrimination with the Equal Employment Opportunity Commission (EEOC) and have received Notice of Right to Sue letters from the EEOC." Dkt 134, ¶ 88. As an affirmative defense, Defendants have the burden of proof to demonstrate that Plaintiffs failed to exhaust their administrative remedies and must show with evidence that Plaintiffs' actions did not provide the EEOC proper notice. That is a question for summary judgment or trial, not a motion to dismiss. *See, e.g.*, *Krause v. Turnberry Country Club*, 571 F. Supp. 2d 851, 858 (N.D. Ill. 2008) "(A party's failure to exhaust her administrative remedies is an affirmative defense.  Consequently, a complaint may not be dismissed for merely failing to rebut an affirmative defense; dismissal is only appropriate if a plaintiff pleads herself out of court by alleging facts that affirmatively establish the defense.") (internal quotation marks, alterations, and citations omitted).

## I.    Plaintiffs Adequately Allege Breach of Contract Claims

Plaintiffs AGACNP-BC Maupin, CNM Monte, NP Stafford, PA-C Thiergartner, ANP Weisend, Dr. Halczenko, and NP Jimenez all alleged that Defendants breached their employment contracts. Plaintiffs alleged that their contracts only authorized termination if they failed to comply with the "Employer's policies," with the "Employer" being defined as "St. Vincent," not "Ascension." Dkt 134, ¶¶ 1136–37, 1139, 1148. However, the COVID-19 vaccination mandate

policy was an "Ascension" policy, not a "St. Vincent" policy. Dkt 134, ¶¶ 1146, 1150, 1175. The contract did not allow Plaintiffs to be terminated for failure to comply with policies other than those issued by their employer, St. Vincent. Dkt. ¶¶ 1148, 1173.

Ascension's sole argument supporting dismissal is that the Plaintiffs "allege . . . in the complaint that Ascension was also their employer." Dkt 157, p. 26. However, that is false. None of the plaintiffs under contract alleged that they had an employment relationship with "Ascension." Rather, they highlighted language from the employment contracts specifically defining their "Employer" as St. Vincent, not Ascension.[75]

### J.   Plaintiffs Have Preserved Class Claims for Employees who were Coerced into Receiving the Vaccine

The class action settlement in Michigan did not encompass claims brought on behalf of individuals who were coerced into the vaccine. Therefore, Plaintiffs' class claims related to those individuals survive. Defendants generally argue that all of Plaintiffs' class claims, including on

---

[75] In a footnote, Defendants claim that Plaintiffs' complaint "does not come close to meeting Rule 8's basic requirements" and cite a series of cases where long complaints were dismissed. Dkt 157, p. 26, n.4. This argument is ironic given Defendants' earlier claim that Plaintiffs had failed to provide sufficient detail about their religious beliefs. The length of Defendants' complaint matches the complexity of the case, which involves allegations by eighty-seven plaintiffs against twenty-nine defendants. The bulk of the complaint, from paragraphs 149 through 873 detail the individual allegations of each plaintiff against particular defendants. The complaints dismissed in the cases cited by Defendants were not criticized for their length *per se*, but because they failed to make particularized allegations that supported their claims. *See, e.g.*, *Aaron v. Durrani*, No. 1:13-CV-202, 2014 WL 996471, at *3 (S.D. Ohio Mar. 13, 2014) (concluding that amended complaint filed by suspended attorney contained "nothing more than a series of legal conclusions levied against all Defendants" and "simply ma[d]e broad allegations against all Defendants."); *Agee v. Alphatec Spine, Inc.*, No. 1:15-CV-750, 2017 WL 5706002, at *2 (S.D. Ohio Mar. 27, 2017) ("The amended complaint is composed primarily of conclusory assertions that merely restate the elements of a cause of action with no specific, supporting factual allegations.") Other complaints were drafted by pro se plaintiffs who failed to provide specific allegations to support their conclusions. *Kensu v. Corizon, Inc.*, 5 F.4th 646, 649 (6th Cir. 2021) (Affirming dismissal of a pro se complaint that was "woefully short on specifics, frequently connect[ed] back to conditions or complaints already litigated, and lacked the substance needed for Defendants to answer and assert any pertinent affirmative defenses.") (internal citations and quotation marks omitted.) *Daw v. Consol. City of Indianapolis & Marion Cnty.*, No. 116-cv-02550, 2017 WL 4539916, at *4 (S.D. Ind. Oct. 11, 2017) (Dismissing a pro se complaint for failure to follow Rule 8 where "[t]he Court cannot make heads or tails of these allegations, and it cannot conclude that Defendants have been put on notice of the claims against them.")

behalf of those who received the vaccine should be dismissed. However, as explained below, those arguments are without merit.

### 1.      Plaintiffs have Exhausted their Administrative Remedies

Defendants allege that Plaintiffs have failed to put them on notice that they intended to seek class-wide relief. However, Plaintiffs have alleged that they filed class claims based on each count with the EEOC. Dkt 134, ¶¶ 1068, 1095, 1131. Defendants have copies of every charge filed with the EEOC and therefore have been put on notice that Plaintiffs intended to file class claims.

### 2.      Plaintiffs' Class Claims Share Common Issues of Law and Fact

To establish commonality, Plaintiffs must show that their claims depend upon a common contention. *See Wal-Mart Stores v. Dukes*, 564 U.S. 338, 349-50 (2011). And that common contention must be capable of class wide resolution—meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Where a company "operates under a general policy of discrimination," companywide class certification is appropriate. *Id.* at 358 (citation omitted).

That commonality is met here because the discriminatory policy (that came from the very top of Ascension's management) was evidenced in both how the company processed requests for accommodation and then in determining that there would be no religious accommodations for its vaccine mandate. That choice makes it feasible for this Court to examine all putative class members' claims for relief and "produce a common answer to the crucial question": did Defendants violate Title VII when they established a sham religious exemption process that coerced plaintiffs into getting the vaccine?  The answer is clearly yes.

Defendants, also allege, without any evidence, that "[t]here is no remaining class that is so numerous that joinder of all members is impracticable" because the *Albright* class action settled. Dkt. 157, PageID #5095. However, as outlined above, that class did not include those who were coerced into receiving the vaccine. Whether the class is actually sufficiently numerous, is an issue for the class certification hearing.

### 3. Plaintiffs' Claims are Typical of the Claims or Defenses of the Class

"The named plaintiffs' claims are typical if they arise 'from the same event or practice or course of conduct that gives rise to the claims of other class members and [their] claims are based on the same legal theory.'" *Roe v. Bridgestone Corp.*, 257 F.R.D. 159, 167 (S.D. Ind. 2009) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992)). "Typical does not mean identical, and the typicality requirement is liberally construed." *Id.* (quoting *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996)).

Here, the putative class members' coercive vaccination claims arise from the same events affecting the named Plaintiffs. And like the putative class members, Plaintiffs requested religious accommodations from Ascension's COVID-19 vaccine mandate, were denied for unlawful reasons, and succumbed to pressure to receive the vaccination. There is no daylight between the putative class members' claims and Plaintiffs' claims. Accordingly, Plaintiffs also satisfy this requirement of Rule 23(a).

### 4. Sincerity of Religious Beliefs is no Obstacle to Class Treatment Here

Defendants claim that Dkt. 157, PageID# 5098–5101 religious discrimination claims cannot be subject to class treatment. Ascension believes that focusing on the sincerity of a religious belief can absolve it of class-wide liability. This fails for at least four reasons.

First, the uniform, corporate-wide policy instituted and implemented by Ascension, and the resulting adverse employment actions, is what controls the class inquiry here. As *Dukes*

noted, class members must have suffered the same injury but they need not "have all suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 350. In other words, discrepancies may exist between the claims of class members so long as there is a "common contention" that holds the claims together. Here, to the extent religious sincerity could even be credibly challenged given that Plaintiffs sacrificed their careers to maintain their religious convictions, it is irrelevant because it was Ascension's uniform discriminatory policy that short-circuited the Title VII inquiry and caused the Plaintiffs' and class members' injuries. There was "a 'common course of conduct' or . . . 'common unlawful policy' that affected the class." *Doster v. Kendall*, 54 F.4th 398, 431 (6th Cir. 2022) (quoting 7A Charles A. Wright et al., *Federal Practice and Procedure* § 1763.1, at 290 (4th ed. 2021)).

Second, and relatedly, Ascension did not actually evaluate the sincerity of each of the Plaintiffs and putative class members' beliefs and cannot now use that failure as a tool to avoid class certification. In enacting an across-the-board policy and predetermining that effectively *no* religious objections could be accommodated, regardless of whether they were sincere and religious in nature, Defendants effectively instituted a policy to "short circuit" the sincerity question since they were going to deny every exemption request anyway. Even assuming Title VII contemplates group assessments of religious objections to a company policy—it does not— Defendants cannot be allowed to now utilize its past failure to individually assess sincerity, as required by Title VII, as a sword against the putative class here. Because Defendants created the class, they must deal with it on the same terms as they constructed it. Likewise, Defendants cannot be heard to complain that the "short cut" was necessary for dealing with more exemption requests than was originally anticipated. Under Ascension's logic, their obligations under Title VII decrease as the number of religious objectors to their policy increases. This cannot be. It was

Ascension's choice to implement an exemption-free policy (unlike most hospitals across the country); it was Ascension's choice to force all employees with religious exemptions out of work at the same time; and it was Ascension's policy to override the individualized religious sincerity analysis and blanket deny all religious accommodation requests. If more time was needed for individualized religious sincerity assessments, Defendants were free to do so—they simply chose not to.

Third, demonstration of sincerely held religious beliefs is not a difficult task generally nor is it difficult here in the particular circumstance of this case. *See, e.g.*, EEOC Guidance, *Section 12: Religious Discrimination*, Part 12-I.A.2 (noting this element is usually not in dispute and is generally presumed or easily established). To begin, most Plaintiffs and putative class members likely have similar religious beliefs that prevented them from taking the vaccination (*e.g.*, its ties to fetal stem cell lines or the observance of their body as the temple of the Holy Spirit). This should be unsurprising given religious objections to abortion are common among adherents to many faith systems, and a broad commitment to the sanctity of life on religious grounds has been fully integrated into the worldview and belief system of many Christians. Likewise, preserving one's body as sacred is a commonly cited religious belief that has been fully integrated into a variety of faiths. More importantly, courts have already recognized these reasons for not taking the COVID-19 vaccine as sincerely held religious beliefs, *see, e.g.*, *U.S. Navy Seals 1–26 v. Biden*, 27 F.4th 336, 342 n.4 (5th Cir. 2022), and courts in this circuit have been warned not to inquire into the personal reasons one has for their religious belief. *See Adeyeye*, 721 F.3d at 452. Not only that, many of the Plaintiffs and putative class members evidenced the sincerity of their religious beliefs by refusing to take the vaccine even in the face of Ascension's coercion and intimidation tactics.

Finally, other courts have already begun recognizing in the COVID-19 vaccination context that religious claims are susceptible to class treatment. When an employer—whether it be a hospital or the U.S. military—acts with a policy that is discriminatory, class treatment is appropriate. *See Doster*, 54 F.4th at 441; *see also U.S. Navy SEALs 1–26 v. Austin*, 594 F.Supp.3d 767, 780 (N.D. Tex. 2022) ("The Court need not consider the sincerity of each individual's beliefs prior to certification."). And in all events, even if individualized assessments were deemed necessary, they can be made after class certification and the class limited at that point—assuming Ascension were allowed a "redo" of its sincerity assessments. *See* William B. Rubenstein, *Newberg on Class Actions* § 3:3 (5th ed. 2011) (noting that a "court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at *some* stage of the proceeding" (emphasis added)).

Here, Ascension essentially asks the Court to assume class-wide insincerity in the face of exemption requests that were made and not processed because of the very discriminatory process about which Plaintiffs are complaining. An employer cannot be allowed to dodge class liability because of its own policy that created the class. If necessary, the Court could later allow for sincerity challenges brought by Defendants to exclude individuals from the class but the difference in claims is secondary to the overarching discriminatory policy that makes class treatment the appropriate vehicle for resolution of the Plaintiffs' claims. *Dukes*, 564 U.S. at 353; *see also Cooper v. Fed. Res. Bank of Richmond*, 467 U.S. 867, 876 (1984) (recognizing a "pattern or practice" claim susceptible to class treatment where the employer has the same "reason for a particular employment decision").[76]

---

[76] Defendants' introduction to their request for Plaintiffs' class claims to be stricken is short and vague consisting of only two sentences. Dkt. 157, PageID# 5093. To the extent dismissal of class claims is also being sought on the grounds of the settlement in the *Albright* case it is premature as the *Albright* settlement is being challenged in two pending appeals in the Sixth Circuit. Furthermore, given that pending appeals in the *Albright* case will separately

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Respectfully submitted,

/s/ William Bock III
William Bock III, Atty. No. 14777-49
Adam Doerr, Atty. No. 31949-53
Kroger Gardis & Regas, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
Tel: (317) 692-9000
Fax: (317) 264-6832
E-mail: wbock@kgrlaw.com
adoerr@kgrlaw.com

*ATTORNEYS FOR PLAINTIFFS*

---

determine whether most of Plaintiffs' class claims may go forward, it may be in the interest of judicial economy for this Court to defer ruling on Defendants' Motion to Dismiss class claims until after resolution of the appeals in *Albright*.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 15, 2024, I filed the foregoing *Plaintiffs' Response to Defendants' Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint* electronically with the Clerk of the Court. Notice of this filing will be sent to the following by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Patricia Pryor
Blythe McGregor
JACKSON LEWIS P.C.
201 E. Fifth Street, 26th Floor
Cincinnati, OH 45202
pryorp@jacksonlewis.com
blythe.mcgregor@jacksonlewis.com

Brian L. McDermott
Megan A. Van Pelt
JACKSON LEWIS P.C.
211 North Pennsylvania Street, Suite 1700
Indianapolis, Indiana 46204
E-mail: brian.mcdermott@jacksonlewis.com
        megan.vanpelt@jacksonlewis.com

Kirsten Milton
JACKSON LEWIS P.C.
150 North Michigan Avenue, Suite 2500
Chicago, IL 60601
kirsten.milton@jacksonlewis.com

/s/ William Bock III
William Bock III

KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
Phone: (317) 692-9000

65