UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PAUL HALCZENKO, *et al., on behalf of themselves and those similarly situated,* | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:21-cv-02816-JPH-MG |
| ASCENSION HEALTH, INC., ST. VINCENT HOSPITAL AND HEALTH CARE CENTER, INC., | ) ) ) ) | |
| Defendant. | ) ) | |
| ST. MARY'S HEALTH, INC., ST. MARY'S WARRICK HOSPITAL, INC., | ) ) ) | |
| Counter Defendants | ) ) ) | |
| KAYLYN APPLEGATE, *et al., on behalf of themselves and those similarly situated,* | ) ) ) | |
| Consol Plaintiffs, | ) ) | |
| v. | ) ) | |
| ST. VINCENT HEALTH, INC., *et. al.,* | ) ) | |
| Consol Defendants. | ) ) | |

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

In 2021, hospital operators Ascension Health, Inc. and Ascension Health Alliance, Inc. implemented a COVID-19 vaccination policy that required all employees to be vaccinated. Ascension then suspended without pay and later terminated employees who did not receive COVID-19 vaccinations after their

1

religious-exemption requests were denied.  Former and current Ascension employees brought this case through a class-action complaint alleging retaliation, discrimination, and failure to accommodate claims under Title VII, and breach of contract claims under Indiana law.  Defendants have filed a motion to dismiss.  Dkt. [156].  For the reasons below, that motion is **DENIED**.

## I.
## Facts and Background

Because Defendants have moved for dismissal under Rule 12(b)(6), the Court accepts and recites "the well-pleaded facts in the complaint as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

### A. Ascension's COVID-19 Vaccination Policies

In July 2021, Ascension told its employees that it would implement a COVID-19 vaccine requirement.  Dkt. 134 at 2 (operative complaint).  The announcement said that "there is a moral obligation to make use of the vaccines" and that "increasing the utilization rate of COVID-19 vaccination . . . is a moral imperative."  *Id.* at 200.  The vaccine requirement would apply to "all associates," including those employed by subsidiaries or partners, "whether or not they provide direct patient care, and whether they work in our sites of care or remotely."  *Id.*

Ascension told employees that if they were not vaccinated by November 12, 2021, they would be "suspended pending further investigation" and that "failure to comply will be deemed a voluntary resignation."  *Id.* at 205.  On November 5, 2021, Ascension clarified that employees were required to receive the vaccine by November 12, 2021, and those who did not would be

suspended.  *Id.* at 206.  Thereafter, failure to provide proof of "fully vaccinated status by Jan. 4, 2022 . . . will be considered a voluntary resignation."  *Id.*

Employees could request exemptions "because of a medical condition or strongly held religious belief."  *Id.* at 204.  The online religious-exemption request form asked employees to state, "'I Agree' to voluntarily resign if my request is denied and I do not comply."  *Id.* at 207.  Ascension managers later asked exemption applicants when they were going to resign.  *Id.*

### B. Plaintiffs' Religious Beliefs and Exemption Requests

Plaintiffs are Ascension employees who worked as—among other roles— nurses, doctors, pharmacists, medical assistants, physical therapists, interpreters, technology specialists, security officers, and chaplains.  *Id.* at 35–178.  Their responsibilities included direct medical care, spiritual care and counseling, patient intake and scheduling, billing and claims resolution, payroll, software development, network security, and administrative support.  *Id.*  Some Plaintiffs worked full-time remotely.  *See id.* at 162–68.

Plaintiffs requested exemptions from Ascension's COVID-19 vaccination policy based on their religious beliefs.  *Id.* at 35–178, 206.  These beliefs "fall into one or more of several categories including":

> a. A belief that abortion is wrong and that receiving the benefit of a product connected to an abortion condones or makes the user complicit with the abortion itself.  Because the vaccines were tested and/or developed using fetal cell lines derived from aborted fetuses, those Plaintiffs could not in good conscience and in accordance with their religious beliefs and faithful religious practice receive them.

     b. A belief that one's body is a temple of the Holy Spirit and should be kept pure; products connected to an abortion, have the effect of manipulating human genetic code, or otherwise contain harmful substances are "unclean" and should not be put into the body.

     c. A belief that one's body is designed by God therefore one should carefully evaluate what types of substances are put in the body and not use substances which attempt to fundamentally alter God's design for the body.  The COVID-19 vaccines alter the way messenger RNA (mRNA) teaches cells within the human body to make a protein or a piece of a protein.  As such, mRNA vaccines are man's attempt to re-engineer how proteins are made within the body, rather than trusting in God's design for those proteins and how they are made.  Thus, taking a mRNA vaccine would be to put[ ] faith in man's design, rather than God's design, for making proteins, a fundamental building block in the body.  Therefore, taking a mRNA product would defile the body.

*Id.* at 202.

     Ascension denied each plaintiff's religious-exemption request.  *Id.* at 208.  Many employees received a "perfunctory, boilerplate email" denying the exemption request but also offering seven days to submit addition information to Ascension.  *Id.* at 212.  Other employees received multiple denials or follow-up emails that their exemption requests that had been denied were still under consideration.  *Id.* at 215.

     On November 12, 2021, Plaintiffs were suspended without pay.  *Id.* at 5.  Then, about December 17, 2021, Ascension called back thousands of suspended employees whose religious exemptions had been denied, including

several Plaintiffs.  *Id.* at 218.  Ascension did not provide backpay for the unpaid suspensions.  *Id.* at 218.  One Plaintiff, Dr. Paul Halczenko, was terminated on January 22, 2022, even though other unvaccinated employees from his unit had returned to work.  *Id.* at 219.  Another Plaintiff, Advanced Nurse Practitioner Alaynah Weisend, was recalled to work on December 26, 2021 then terminated on January 14, 2022 "due to a reduction in force."  *Id.* at 220.

Plaintiffs Jennifer Maupin, Bethany Monte, Daniella Stafford, Amanda Thiergartner, Alaynah Weisend, Paul Halczenko, and Jennifer Jimenez had employment contracts with Ascension entity St. Vincent Health.  *Id.* at 7, 245–49.  These contracts allowed termination for cause based on failure to comply with "written [policies] of the Employer," which Plaintiffs allege does not include Ascension's policies.  *Id.* at 246–47.  Plaintiffs also allege that these contracts do not authorize suspension without pay.  *Id.* at 247, 251.

### B. Procedural History

On November 8, 2021, four Ascension employees filed this case against Ascension and St. Vincent Hospital.  Dkt. 1.  Plaintiffs sought a temporary restraining order and preliminary injunction, dkt. 3, which the Court denied, dkt. 19; dkt. 50.  *See Halczenko v. Ascension Health, Inc*, 37 F.4th 1321 (7th Cir. 2022) (affirming the denial of injunctive relief).

Plaintiffs filed the operative complaint on June 9, 2023, joining more than 80 Plaintiffs' claims against more than 25 Ascension entities.  Dkt. 134.  Plaintiffs raise class claims of retaliation, religious discrimination, and failure to accommodate under Title VII, and a class breach of contract claim.  *Id.* at

5

228–257.  They seek class certification, including for multiple subclasses of employees; injunctive and declaratory relief; and monetary damages.  *Id.* at 257–60.

This case was stayed on July 10, 2023, due to a related case in the Western District of Michigan that included a pending class settlement, which was later granted final approval.  Dkt. 144; dkt. 157-1; *see Albright v. Ascension Mich.*, No. 1-22:cv-00638-JB-SJB (W.D. Mich.).  Dkt. 144.  In June 2024, the Sixth Circuit vacated the district court's orders approving that class settlement and remanded for further proceedings.  Dkt. 167-1 (6th Cir. Op.). In December 2023, this Court ordered Defendants to respond to the complaint, but otherwise left the stay in effect.  Dkt. 155.  Defendants filed a motion to dismiss the consolidated complaint for failure to state a claim.  Dkt. 156.

## II.
## Rule 12(b)(6) Standard

Defendants may move under Federal Rule of Civil Procedure 12(b)(6) to dismiss claims for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In other words, a complaint "must allege enough details about the subject-matter of the case to present a story

6

that holds together," *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021),

"but it need not supply the specifics required at the summary judgment stage."

*Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021).

When ruling on a 12(b)(6) motion, the Court "accept[s] the well-pleaded

facts in the complaint as true, but legal conclusions and conclusory allegations

merely reciting the elements of the claim are not entitled to this presumption of

truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). "It is

enough to plead a plausible claim, after which a plaintiff receives the benefit of

imagination, so long as the hypotheses are consistent with the complaint."

*Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017).

### III.
### Analysis

Plaintiffs allege class claims of retaliation, religious discrimination, and

failure to accommodate under Title VII, and a class breach-of-contract claim.

Dkt. 134 at 228–257. Ascension has moved to dismiss all claims and to strike

the class allegations. Dkt. 156.

### A. Sincerely Held Religious Beliefs

Defendants first argue that Plaintiffs cannot proceed on their Title VII

claims because they "have not identified a single religious belief that any of

them sincerely held that conflicted with the vaccine requirement." Dkt. 157 at

3. Plaintiffs respond that they have plausibly pleaded their sincere religious

beliefs, including:

> a. A belief that abortion is wrong and that receiving the
> benefit of a product connected to an abortion

condones or makes the user complicit with the abortion itself. Because the vaccines were tested and/or developed using fetal cell lines derived from aborted fetuses, those Plaintiffs could not in good conscience and in accordance with their religious beliefs and faithful religious practice receive them.

b. A belief that one's body is a temple of the Holy Spirit and should be kept pure; products connected to an abortion, have the effect of manipulating human genetic code, or otherwise contain harmful substances are "unclean" and should not be put into the body.

c. A belief that one's body is designed by God therefore one should carefully evaluate what types of substances are put in the body and not use substances which attempt to fundamentally alter God's design for the body. The COVID-19 vaccines alter the way messenger RNA (mRNA) teaches cells within the human body to make a protein or a piece of a protein. As such, mRNA vaccines are man's attempt to re-engineer how proteins are made within the body, rather than trusting in God's design for those proteins and how they are made. Thus, taking a mRNA vaccine would be to put[ ] faith in man's design, rather than God's design, for making proteins, a fundamental building block in the body. Therefore, taking a mRNA product would defile the body.

Dkt. 165 at 19–20 (quoting dkt. 134 at 202).

Title VII defines religion as "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e. This is a "broad and intentionally hands-off definition of religion." *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 452 (7th Cir. 2013). Accordingly, "one guidepost is clear: courts should not undertake to dissect religious beliefs."

*Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1011 (7th Cir. 2024) (reversing the
dismissal of COVID-19 vaccination Title VII claims).  It's enough to survive a
motion to dismiss that an employee's accommodation request was "plausibly
based at least in part on some aspect of their religious belief or practice."  *Id.* at
1007.

Here, Plaintiffs' allegations satisfy that standard.  Defendants argue that
Plaintiffs have not pleaded their "actual religious belief[s]" but instead "engage
in group pleading" with merely generic assertions.  Dkt. 166 at 3–4.  Not so.
The complaint identifies several religious beliefs that Plaintiffs hold and alleges
that each Plaintiff has "sincerely held religious belief that prevented them from
complying with the vaccination mandate in good conscience."  Dkt. 134 at 201–
02.  That's enough to survive a motion to dismiss because Plaintiffs "need only
aver that the employer instituted a (specified) adverse employment action
against the plaintiff on the basis of" their religion.  *Luevano v. Wal-Mart Stores,
Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) ("In [Title VII] cases, the complaint
merely needs to give the defendant sufficient notice to enable him to begin to
investigate and prepare a defense."); *see Carlson v. CSX Transp., Inc.*, 758 F.3d
819, 827, 830 (7th Cir. 2014).

Defendants next rely on district court cases rejecting asserted religious
beliefs as too broad or too vague, or as "isolated personal beliefs" that are not
"entitled to the same level of protection as religious beliefs."  Dkt. 166 at 4–6.
This argument is foreclosed by the Seventh Circuit's intervening decision in
*Passarella.*  108 F.4th 1005.  There, the court reversed the dismissal of Title VII

9

claims based on vaccine-exemption requests that were "less robust" than they could have been and were mixed with secular motivations. *Id.* at 1008. The Seventh Circuit explained "that judges are not to undertake to dissect religious beliefs . . . because they are not articulated with the clarity and precision that a more sophisticated person might employ." *Id.* at 1010 (quoting *Thomas v. Rev. Bd. of the Ind. Emp. Sec. Div.*, 450 U.S. 707, 715 (1981)). Similarly here, Plaintiffs allege that their beliefs are religious and give examples in undeniably religious terms. Dkt. 134 at 201–02. So, as in *Passarella*, they have alleged accommodation requests that are "religious in nature within the meaning of Title VII." *Id.* at 1009.

Finally, Defendants argue that some of Plaintiffs' beliefs do not conflict with Ascension's vaccination requirement because Johnson & Johnson's COVID-19 vaccine was not a mRNA vaccine. Dkt. 166 at 4. The complaint does not, however, allege that any Plaintiff's religious belief relates only to mRNA vaccines. Dkt. 134 at 201–02. Instead, as explained above, they have alleged sincere religious objections to the vaccination requirement, *see id.*, and that is enough under Title VII's pleading standard, *Luevano*, 722 F.3d at 1028. Furthermore, "Title VII and courts [ ] do not require perfect consistency in observance, practice, and interpretation when determining . . . whether a person's belief is sincere." *Adeyeye*, 721 F.3d at 453. It's enough "at the pleading stage" that "the employee plausibly based her vaccination exemption request at least in part on an aspect of her religious belief or practice."

10

*Passarella*, 108 F.4th at 1009.  Here, Plaintiffs have alleged enough to meet that standard.  *See id.*

### B. Title VII Discrimination

Title VII prohibits an employer from "discharg[ing] any individual . . . or otherwise [discriminating] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's  . . . religion."  42 U.S.C. § 2000e-2(a)(1).  This provision prohibits employers from making religion "a 'motivating factor' in an employment decision."  *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015).  Plaintiffs allege that Ascension violated this provision by imposing its own religious belief—that vaccination was a "Catholic  . . . moral imperative"— to require Plaintiffs "to set aside their personal religious beliefs on pain and penalty of losing employment."  Dkt. 134 at 232–36.

Defendants argue that this claim should be dismissed because "Plaintiffs do not allege that they were treated differently than any other employee because of their religion."  Dkt. 157 at 5–6.  Plaintiffs respond that they have stated a claim by pleading that Defendants "create[ed] a sham religious exemption process" that "issu[ed] blanket denials" with no individualized assessments despite granting medical exemptions.  Dkt. 165 at 28–31.

To state a Title VII claim, Plaintiffs are not required to allege the "elements of a prima facie case," including the "existence of a similarly situated comparator."  *Carlson*, 758 F.3d at 827, 830.  Instead, they "need only" allege that defendants "instituted a (specified) adverse employment action against

11

[plaintiffs] on the basis of their [religion]."  *Id.* at 827; *see Luevano*, 722 F.3d at 1028.

Here, Plaintiffs allege that they "were discriminated against based on their refusal, on religious grounds, to receive a COVID-19 vaccine and due to their applying for religious exemption."  Dkt. 134 at 233–34.  And, while it was "not needed," Plaintiffs have "bolstered the plausibility of [their] claims," *Carlson*, 758 F.3d at 827, by also alleging that:

- Defendants said that vaccination was a "Catholic . . . moral imperative," dkt. 134 at 233 ¶ (citing 11 at 1–2);
- To submit their exemption requests, Plaintiffs had to agree to an online click-wrap that said they would voluntarily resign if their request was not approved, dkt. 134 at 207 ¶ 973;
- After suspending those who did not comply with the vaccination policy, Defendants called back thousands of suspended employees whose religious exemptions were denied, dkt. 134 at 7, 9, 218 ¶¶ 24, 35, 1024.

That is sufficient to allege a Title VII discrimination claim.  *Carlson*, 758 F.3d at 827 (allowing plaintiff's sex discrimination claim to proceed past motion to dismiss stage because "she alleged which positions she sought and was denied, and she attributed the denial to sex discrimination").

### C. Title VII Religious Accommodation

Title VII requires employers to accommodate their employees' religious practices unless doing so would impose an "undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).  Defendants argue that Plaintiffs' religious accommodation claim must be dismissed because providing accommodations would have caused a substantial burden because of the safety risk presented by unvaccinated employees in a healthcare context.  Dkt. 157 at

6–10; dkt. 166 at 11–13.  Plaintiffs respond that substantial burden is an affirmative defense that Defendants have not met their burden of showing, and that Defendants' safety concerns were pretextual.  Dkt. 165 at 31–41.

An undue hardship exists "when a burden is substantial in the overall context of an employer's business."  *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). This analysis "takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer."  *Id.* at 470–71. The employer "bears the burden of proof, so it must show, as a matter of law, that any and all accommodations would have imposed an undue hardship." *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 455 (7th Cir. 2013).

Defendants contend that the Department of Health and Human Services has found that unvaccinated medical workers pose a "serious threat to the health and safety of patients," *Biden v. Missouri*, 595 U.S. 87, 91 (2022), so their vaccine requirement "easily meet[s]" the undue hardship test.  Dkt. 157 at 6–10.  That test, however, requires consideration of "all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact."  *Groff*, 600 U.S. at 468.  Here, that includes at least the effectiveness of COVID-19 vaccination in preventing disease transmission, the extent of safety risks from employees who could prove natural immunity, and the effectiveness and costs of other mitigation measures like personal protective equipment.  *See* dkt. 165 at 27–30.  Against those arguments, Defendants do not identify possible accommodations and their practical effects

and costs for its business.[1]  *See* dkt. 166 at 12–15.  Defendants have therefore not fully developed their affirmative defense of undue burden.  *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("[C]ourts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses" unless "all relevant facts are presented."); *see also Villareal v. Rocky Knoll Health Ctr.*, No. 21-CV-729, 2021 WL 5359018 (E.D. Wis. Nov. 17, 2021) (whether an accommodation presented an undue hardship could not "be resolved on the pleadings alone").

Defendants also argue that Plaintiffs Halczenko, Jimenez, Gillespie, Fralic, Evans, and Olejnik should have their claims dismissed because they never requested a religious accommodation.  Dkt. 157 at 4.  Plaintiffs have alleged, however, that they "all applied . . . for religious exemptions from the COVID-19 vaccine."  Dkt. 134 at 206.  The complaint also alleges that Ascension recalled Ms. Olejnik with a one-year exemption, so it's reasonable to infer that she requested an accommodation that Ascension initially denied.  *Id.* at 102.  And Plaintiffs submitted with their complaint affidavits from Plaintiffs Halczenko, Jimenez, Gillespie, Fralic, and Evans that they too requested exemptions.  *See* dkt. 165 at 23–24.

Defendants' motion to dismiss Plaintiffs' religious accommodations claim is therefore denied.

---

[1] Moreover, Defendants argue broadly that Plaintiffs' claim should be dismissed in its entirety, but they do not explain what undue hardship they would have faced from granting religious accommodations to fully remote workers.  *See* dkt. 134 at 162–68.

**D. Title VII Retaliation**

Title VII prohibits employers from "discriminat[ing] against any . . . employees" who "opposed any practice" made unlawful by Title VII or who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e-3(a). Plaintiffs allege that Defendants retaliated against them for seeking religious exemptions by (1) requiring employees to voluntarily resign through the religious exemption application process and (2) suspending them without pay. Dkt. 134 at 228–31.  "Pleading a retaliation claim under Title VII requires the plaintiff to allege that she engaged in statutorily protected activity and was subjected to an adverse employment action as a result." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014).

**1. Protected Activity**

Defendants first argue that Plaintiffs' retaliation claim must be dismissed because requesting a religious accommodation is not protected activity under Title VII.  Dkt. 157 at 10–13.  Plaintiffs respond that the protected activity "was pursuing a religious exemption request through a process which was set up to deny any accommodation of Plaintiffs' religious beliefs."  Dkt. 165 at 44.

In some cases, courts have held that requesting a religious exemption, by itself, is not protected activity under Title VII.  *See Hunter v. AFGroup Emerging Mkts.*, 2023 WL 372204 at *2–3 (E.D. Wisc. Jan. 24, 2023); *Stanley v. ExpressJet Airlines, Inc.*, 808 Fed. App'x 351, 357–58 (6th Cir. 2020) (unpublished).  That's because "[s]imply" requesting an accommodation only

exercises a Title VII right—without opposing anything—unless "[ ]accompanied by anything that can be plausibly interpreted as opposition to an unlawful employment practice." *Hunter*, 2023 WL 372204 at *2–3. So, in *Hunter*, requesting exemption from COVID-19 vaccination could not be in opposition to an employment practice—and therefore was not protected activity—because the employer "had not yet announced, much less implemented, any vaccination policy." *Id.* at *1–2 ("Thus, there was nothing for Hunter to oppose.").

Here, by contrast, Plaintiffs allege that after Ascension announced its vaccine mandate, it used the accommodation process "as a tool to limit its associates' rights," including by discouraging accommodation requests. Dkt. 134 at 207–08. In support, they allege that employees seeking exemptions had to agree to "voluntarily resign" their employment if their request was denied and that Ascension managers "asked exemption applicants when they were going to 'resign.'" *Id.*

Plaintiffs have therefore pleaded that, under these circumstances, their accommodation requests were not "merely" exercising their Title VII rights, but also opposing the allegedly discriminatory practices that Ascension connected to the religious-exemption process. *Hunter*, 2023 WL 372204 at *2–3; *see Privler v. CSX Transp. Inc.*, 2021 WL 3603334 at *19 (N.D.N.Y. Aug. 13, 2021) ("While the Second Circuit has not expressly determined whether a request for a religious accommodation constitutes 'protected activity' for purposes of a Title VII retaliation claim, District Courts in the Circuit have held that it does."). That's enough to survive a motion to dismiss. *See Luevano*, 722 F.3d at 1028

("In [Title VII] cases, the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense.").

### 2. Causation

Title VII retaliation claims require that the protected activity be the "but-for cause of the alleged adverse action." *Carlson*, 758 F.3d at 828 n.1.  This "does not mean that the protected activity must have been the only cause," but "that the adverse action would not have happened without the activity."  *Id.* Ascension argues that Plaintiffs have pleaded themselves out of court on causation by alleging only that Ascension did what it always said it would do— suspend employees who were not vaccinated, regardless of whether they requested accommodation.  Dkt. 157 at 13–14; dkt. 166 at 16–17.  Plaintiffs respond that their claim is not based only on their suspensions, but also on Ascension's requirement that they agree to resign before they could even apply for religious exemptions.  Dkt. 165 at 43–50 (explaining that Plaintiffs are not raising "the paradigmatic retaliation claim, in which a plaintiff alleges that a specific adverse action was reactively taken because the employee" engaged in protected activity).  They contend that through that requirement, Ascension fettered their access to Title VII's protections by requiring them to agree to resign or be vaccinated if their accommodation requests were denied.  *See* dkt. 134 at 207–08 (relying on *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

In *Burlington*, the Supreme Court explained that Title VII's antiretaliation provision prohibits a broader range of employer conduct than Title VII's anti-

discrimination provision does.  548 U.S. at 61–62 (interpreting 42 U.S.C. § 2000e-3(a)).  An employer's actions can therefore be retaliatory even if they do not "affect employment or alter the conditions in the workplace."  *Id.*  Instead, an employer violates Title VII's antiretaliation provision by "interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees."  *Id.* at 63.

Plaintiffs argue that this broader scope of Title VII's antiretaliation provision supports causation here because being required to agree to resign before applying for a religious exemption fetters the right to seek an exemption and dissuades EEOC charges once an exemption is denied.  Dkt. 165 at 33–34.  Ascension does not engage with this theory or even discuss *Burlington*, the principal authority relied on by Plaintiffs.  *See* dkt. 166 at 17–18.  Instead, Ascension argues that Plaintiffs were not dissuaded from engaging in protected activity because they've pleaded that they filed exemption requests and EEOC charges.  *See id.*

Ascension cites no authority, however, showing that Plaintiffs' use of Title VII's protections pleads their retaliation claim out of court.  *See id.*  Instead, in *Burlington*, the Supreme Court said that the standard is whether "a reasonable worker" would have been dissuaded from using Title VII's protections.  548 U.S. at 68.  So Title VII's antiretaliation provision "prohibit[s] employer actions that are *likely* to deter victims of discrimination from complaining to the EEOC, the courts, and their employers."  *Id.* (emphasis added).

18

Under that standard, Ascension has not shown at this stage that requiring Plaintiffs to agree to resign as a condition of even asking for a religious accommodation cannot constitute an adverse action caused by Plaintiffs' protected activity. *See* dkt. 166 at 17–18. As the Seventh Circuit has explained, under *Burlington*, causation and adverse action are fact-sensitive issues for which "context matters." *Poullard v. McDonald*, 829 F.3d 844, 857 (7th Cir. 2016). So, in this fact-sensitive area, Ascension has not shown that requiring Plaintiffs to agree to resign in order to apply for a religious exemption is so "trivial" from "the perspective of a reasonable person in the plaintiff's position" that they have pleaded themselves out of court on their retaliation claims. *Burlington*, 548 U.S. at 69–70; *see* dkt. 166 at 16–17 ("This is not a case of failing to plead a causal connection, rather Plaintiffs have pled themselves out of a claim.").

Nor have Plaintiffs pleaded themselves out of court regarding their suspensions without pay. Generally, a retaliation claim lacks causation when the employer decided to take the alleged adverse action "before [the plaintiff] engaged in protected activity." *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 762 (7th Cir. 2022). Here, while Ascension imposed suspensions that it announced before Plaintiffs sought religious accommodations, Plaintiffs allege that Ascension did so having already planned not to grant religious accommodation requests, so that those employees would be suspended. Dkt. 134 at 229–30. Similarly, Plaintiffs did not undermine causation by pleading that all unvaccinated employees were suspended regardless of whether they requested

religious exemptions.  *See id.*  Therefore, the pleadings do not show that this is necessarily a case when the adverse employment event was decided before and disconnected from the protected activity such that there cannot be causation. *See Lewis*, 36 F.4th at 762.  So Plaintiffs have not pleaded themselves out of court under the low pleading burden for Title VII claims.  *See Luevano*, 722 F.3d at 1028.

### E. Plaintiff Patrick Fowler

After Ascension denied his religious exemption request, Plaintiff Patrick Fowler was vaccinated.  Dkt. 134 at 83.  Ascension argues that Mr. Fowler has failed to plead any Title VII claims because he has not alleged an adverse employment action.  Dkt. 157 at 4–5.  Mr. Fowler responds that the vaccine mandate was an adverse employment action because he was subjected to purposeful religious discrimination aimed at coercing him to be vaccinated against his conscience.  Dkt. 165 at 24–28.

"For an employment action to be actionable, it must be a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits."  *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007).  This can include if "the *conditions* in which he works are changed in a way that subjects him to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment."  *Herrnreiter v. Chi. Housing Auth.*, 315 F.3d 742, 744 (7th Cir. 2002); *accord Hilt–Dyson v. City of Chicago*, 272 F.3d 456, 466 (7th Cir. 2002)

("[A]n adverse employment action need not be quantifiable in terms of pay or benefits.").

A workplace vaccine mandate imposed to keep people safe does not constitute an adverse employment action, even if an employee strongly disagrees with it because of his religious beliefs. *See Klaassen v. Trustees of Indiana Univ.*, 7 F.4th 592, 593 (7th Cir. 2021); *Porter v. City of Chicago*, 700 F.3d 944, 954 (7th Cir. 2012) (explaining, in a religious-discrimination case, "that not everything that makes an employee unhappy is an actionable adverse action"); *Ananias v. St. Vincent Med. Grp.*, 2022 WL 17752208 at *3 (S.D. Ind. Dec. 19, 2022). Here, however, Mr. Fowler alleges that Ascension "intentionally established a coercive process calculated to force healthcare workers and staff *to abandon their religious objections* to the COVID-19 vaccination." Dkt. 165 at 26 (emphasis added).

Ascension does not address that allegation or Mr. Fowler's argument that his claim is viable because the vaccine requirement was a condition of employment that was targeted at his religious beliefs. *See* dkt. 157 at 4–5; dkt. 166 at 8–10. Instead, Ascension relies on two cases from this district that found a lack of standing to challenge employers' vaccination mandates. *Capuano v. Eli Lilly & Co.*, 2023 WL 5722671 at *6 (S.D. Ind. Sept. 5, 2023); *Ananias*, 2022 WL 17752208 at *3. Those cases do not control here because Mr. Fowler has alleged injury-in-fact, dkt. 134 at 83, and because they did not involve allegations that the employer intentionally targeted employees who

belonged to one of Title VII's protected classes.  *See Capuano*, 2023 WL 5722671 at *6; *Ananias*, 2022 WL 17752208 at *3.

In cases where targeting of a protected class is alleged, that can be enough to plausibly allege an adverse employment action.  *See Wince v. CBRE, Inc.*, 66 F.4th 1033, 1041 (7th Cir. 2023) ("Conditions of employment designed to harass and humiliate an employee because she is a member of one of Title VII's protected classes may constitute an adverse employment action.").  So an employment condition as routine as a drug test generally is not an adverse employment action, but can be if it is imposed because of the employee's race. *See Stockett v. Muncie Ind. Trans. Sys.*, 221 F.3d 997, 1001–02 (7th Cir. 2000). That's true even if the employee submits to the drug test.  *See id.*; *cf. E.E.O.C. v. Univ. of Chi. Hosps.*, 276 F.3d 326, 331 (7th Cir. 2002) (plaintiffs may bring Title VII actions for constructive discharge even though they "chose" to resign if the resignation was "because of discriminatory harassment").

The standard for such a claim is high—the allegedly harassing or humiliating conduct must be "severe or pervasive before it will be considered an adverse employment action." *Hilt–Dyson*, 272 F.3d at 466.  Whether that standard can be met here is better addressed at a later stage of this case.  *See Wince*, 66 F.4th at 1042 (addressing when a trier of fact could conclude that an employer's actions were "designed to harass and humiliate" the employee based on a protected class).  Therefore, at this early stage, Ascension has not shown that Mr. Fowler's claims must be dismissed.

**F. Exhaustion**

Defendants argue that the operative complaint does not allege that
Plaintiffs' EEOC charges included class allegations, dkt. 157 at 15, and that
the Plaintiffs' claims must be dismissed against Ascension entities not named
in an EEOC charge.  Dkt. 157 at 15, 24–25.   Plaintiffs respond that they have
alleged that they filed appropriate EEOC charges, that Ascension has copies of
those charges, and that exhaustion through EEOC charges is an affirmative
defense that cannot support dismissal unless a plaintiff pleads herself out of
court.  Dkt. 165 at 53–56.

"Before bringing a Title VII claim, a plaintiff must first exhaust his
administrative remedies by filing charges with the EEOC and receiving a right
to sue letter."  *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019).
A subsequent lawsuit may then only assert claims "that were included in [the]
EEOC charge, or that are like or reasonably related to the allegations of the
charge and growing out of such allegations."  *Id.*  "A plaintiff's failure to
exhaust administrative remedies is an affirmative defense, which is the
defendant's burden to prove."  *Salas v. Wisconsin Dep't of Corr.*, 493 F.3d 913,
922 (7th Cir. 2007).  Plaintiffs have "no obligation to allege facts negating an
affirmative defense in [the] complaint." *Mosely v. Bd. of Educ. of City of Chicago*,
434 F.3d 527, 533 (7th Cir. 2006).

Here, Plaintiffs allege that they filed EEOC charges and that some of the
class representatives filed class-wide claims.  Dkt. 134 at 21–22, 231, 236,
245.  Because there is therefore "nothing on the face of [the] complaint that

compels a conclusion that [they] failed to exhaust," dismissal is not appropriate based on an affirmative defense. *Mosely*, 434 F.3d at 533 ("[T]he earliest possible time to consider [the affirmative defense of exhaustion] would normally be after the answer has been filed, if it is possible to decide the issue through a Rule 12(c) motion for judgment on the pleadings.").[2]   Therefore, the motion to dismiss on these grounds is denied.

### G. Breach of Contract Claims

Several Plaintiffs—Halczenko, Maupin, Monte, Stafford, Weisend, Thiergartner, and Jimenez—allege that St. Vincent breached the "for cause" provision of their employment contracts when it suspended them without pay and terminated[3] them based on unreasonable policies, including policies that were not St. Vincent's but rather Ascension's.  Dkt. 134 at 247–55.

Defendants argue that the breach of contract claim should be dismissed because it is convoluted and because Ascension, rather than St. Vincent, is Plaintiffs' employer.  Dkt. 157 at 26–27.  Plaintiffs respond that only St. Vincent was an employer as defined by the contract.  Dkt. 165 at 54–55.

While Plaintiffs' allegations pivot between smaller groups of Plaintiffs and their respective contracts, any convoluted allegations do not support dismissal

---

[2] Ascension argues in reply that Mr. Fowler's EEOC charge can be considered because it was referenced in the complaint, and that it did not include class allegations regarding plaintiffs who were allegedly coerced into receiving vaccines.  Dkt. 155 at 18–19.  Since this argument was raised for the first time in reply and related to an affirmative defense, the Court declines to consider it at this 12(b)(6) stage.

[3] Plaintiffs Halczenko, Maupin, Monte, and Stafford were terminated.  Dkt. 134 at 250, 256.  Plaintiff Weisend was terminated based on a reduction in force.  Dkt. 134 at 256. Plaintiffs Thiergartner and Jimenez were recalled, not terminated. Dkt. 134 at 97, 257.

here.  *See U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("A district court is not 'authorized to dismiss a complaint merely because it contains repetitious and irrelevant matter, a disposable husk around a core of proper pleading.'").  And while Plaintiffs allege that Ascension was at least one of their employers under Title VII, that does not preclude St. Vincent from being the employer for their breach of contract claim.  *See* dkt. 134 at 30, 249, 254 dkts. 139-1, 139-2.  The allegations therefore do not contain contradictions requiring dismissal of Plaintiffs' breach of contract claims.

### H. Class Certification

Federal Rule of Civil Procedure 23(c)(1)(A) instructs courts to make determinations as to class certification "at an early practicable time." "Consistent with this language, a court may deny class certification even before the plaintiff files a motion requesting certification."  *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011).

Ascension argues that Plaintiffs' class allegations should be stricken because their claims are inherently incapable of class treatment.  Dkt. 157 at 14–24.  It contends that Plaintiffs cannot show the class requirements of numerosity or being ascertainable, or that common issues predominate over individualized issues.  *Id.*

### 1. Numerosity

Ascension argues that any classes are not so numerous that joinder is impractical because the Plaintiffs have "already joined 80 individuals to this

case" and "any class claims beyond the named plaintiffs" have been resolved by
*Albright, et al. v. Ascension Michigan, et al.*, Case No. 1:22-cv-00638 (W.D.
Mich.).  Dkt. 157 at 16 (citing dkt. 157-1).  While Ascension's motion to dismiss
was pending, the Sixth Circuit vacated and remanded the district court's
approval of the class action settlement.  Dkt. 167-1 (6th Cir. Op.).  Because at
this point the number of class members appears not to be limited by the
*Albright* settlement, Ascension has not shown that the class allegations should
be stricken for lack of numerosity.

### 2. Ascertainable

Ascension argues that class members are not ascertainable because the
class allegations are not limited to employees with sincere religious beliefs or
who were denied accommodation, and includes employees that "will request"
religious accommodations.  Dkt. 157 at 18.  Plaintiffs respond that
ascertainability is satisfied if class members can be identified "at *some* stage of
the proceeding."  Dkt. 165 at 50.

"Rule 23 requires that a class be defined, and experience has led courts
to require that classes be defined clearly and based on objective criteria."
*Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015).  Class
definitions therefore cannot be "too vague[]," "defined by subjective criteria," or
"defined in terms of success on the merits."  *Id.* at 657–60.  "To avoid
vagueness, class definitions generally need to identify a particular group,
harmed during a particular time frame, in a particular location, in a particular
way."  *Id.* at 660.

Here, the class allegations "identify a particular group"—Ascension employees—who were harmed "in a particular way"—discharge, resignation, unpaid suspension, or receipt of the vaccine against their religious beliefs. *Mullins*, 795 F.3d at 660; *see* dkt. 134 at 221.  That is enough to allege class claims that may prove to be ascertainable, even if class definitions may need to be modified.  *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 826 (7th Cir. 2012) (explaining that district courts are "free to revisit" class definitions based on discovery and other developments).  Similarly, class allegations that include future class members do not show that class members can never be ascertained.  *See Sparger-Withers v. Taylor*, 628 F. Supp. 3d 821, 830 (S.D. Ind. 2022); 1 McLaughlin on Class Actions § 4:4 (20th ed.) ("There is no per se prohibition against certifying a single class including both presently injured and future claimants.").

Ascension therefore has not shown that a lack of ascertainability requires striking the class allegations.

### 3. Predominance

Ascension argues that Plaintiffs' Title VII and breach of contract claims are too individualized to satisfy Federal Rule of Civil Procedure 23(b)(3)'s requirement that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Dkt. 157 at 17–18, 19–24.  Plaintiffs respond that despite some differences in class members, there is a "common contention," centering on Ascension's uniform policy that caused the class injuries.  Dkt. 165 at 48–50.

Rule 23(b)(3) does not require the absence of individual questions, but only that "common questions represent a significant aspect of a case and . . . can be resolved for all members of a class in a single adjudication." *Messner*, 669 F.3d at 815. "[T]o put it another way, common questions can predominate if a 'common nucleus of operative facts and issues' underlies the claims brought by the proposed class." *Id.* This analysis begins with the elements of the underlying cause of action. *Santiago v. City of Chicago*, 19 F.4th 1010, 1017 (7th Cir. 2021).

Here, as explained above, Plaintiffs' Title VII claims center on Ascension's vaccination policy and its religious accommodations process. Plaintiffs' breach of contract claim requires a valid contract, breach, and resulting damages. While plaintiffs allege differences in the details of their harms, religious beliefs, and employment contracts, they also allege commonalities in each of those issues that may fall into a common class definition or subclass definitions. *See* dkt. 134 at 202, 221, 245–257. Moreover, differences in class members' injuries do not bar the finding that common issues predominate. *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("[T]he fact that damages are not identical across all class members should not preclude class certification."). And there are common issues here—at least regarding Ascension's alleged policy of rejecting religious exemptions and similar contract provisions.

Plaintiffs therefore may be able to show that common issues predominate in proposed classes. At the least, "additional discovery" would "be useful in

resolving the class determination." *Kasalo*, 656 F.3d at 563.  The Court

therefore denies Ascension's motion to strike the complaint's class allegations.

## IV.
## Conclusion

Defendants' motion to dismiss is **DENIED**.  Dkt. [156].  The partial stay

is therefore **LIFTED** and the parties **shall submit** a joint proposed revised case

management plan within ten days of this order.  Dkt. 171.  Magistrate Judge

Garcia is asked to then hold a status conference to address settlement and

case management.

**SO ORDERED.**

Date: 9/25/2024

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel